**Randy WEST and Antonia West, Appellants,**

v.

**MAINTENANCE TOOL AND SUPPLY CO., INC. and Rene Rodriguez, Individually and as Representative of Maintenance Tool and Supply Co., Inc., Appellees.**

**No. 13–99–271–CV.**

Court of Appeals of Texas, Corpus Christi-Edinburg.

Aug. 30, 2002.

---

John M. Schutza, English & Clemons, Corpus Christi, for appellants.

Belinda Hinojosa–Persohn, Rene Rodriguez, Corpus Christi, for appellees.

Before Justices DORSEY, YANEZ, and SEERDEN.[1]

**OPINION**

Opinion by Justice YAÑEZ.

Appellants, Randy and Antonia West,[2] bring this appeal from a default summary

---

**1.** Retired Chief Justice Robert J. Seerden, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

**2.** Although both are appellants, "West" refers to Randy West and encompasses the claims of both parties.

judgment granted in favor of appellees, Maintenance Tool & Supply Company, Inc. and Rene Rodriguez (collectively "MT"), on West's claims for workers' compensation retaliation[3] and defamation. The judgment also awarded MT $21,095.00 in sanctions pursuant to rule 13. *See* Tex.R. Civ. P. 13.

In five issues, West contends: (1) he did not receive adequate notice of the summary judgment hearing because the notice was unsigned and referred only to a "proposed" date and time for the hearing; (2) the trial court erred in granting summary judgment in MT's favor; (3) the trial court erred in overruling his motion for new trial; and (4) the trial court's order imposing sanctions pursuant to rule 13 is void and unenforceable because (a) it fails to state grounds for holding West's counsel in contempt and (b) fails to state with particularity the good cause for finding that the pleadings upon which sanctions are based are groundless and frivolous and brought for purposes of harassment. We reverse the order imposing sanctions against West's counsel and otherwise affirm the trial court's judgment.

### Background

West filed suit against MT, alleging retaliatory discharge and defamation. MT filed a "traditional" motion for summary judgment under rule 166a(c). *See* Tex.R. Civ. P. 166a(c). MT's motion also requested that the trial court impose rule 13 sanctions against West's counsel on grounds that West's claims were groundless and brought in bad faith and for purposes of harassment. *See* Tex.R. Civ. P. 13. MT's motion was served on West's counsel, along with a "Notice of Hearing," which stated that a hearing was set for Wednesday, February 3, 1999, at 1:30 p.m. The "Notice of Hearing" included spaces for the judge's signature and the date, which were left blank. A copy of the cover letter to the district clerk was attached to the motion; the letter described the notice as a "proposed Order and Notice of Hearing." West's counsel contends he understood the notice as a *proposed* hearing date only, and that he failed to understand that a hearing had been set. West did not file a response to the summary judgment motion and did not appear at the hearing.

On February 3, 1999, the day of the hearing, the trial court granted the motion for summary judgment and imposed rule 13 sanctions in the amount of $21,095.00 against West. Two days later, West filed a "Motion to Withdraw Order Granting Summary Judgment and Rule 13 Sanctions and Motion for New Trial."[4] The trial court held a hearing on April 13, 1999 and denied West's motion on April 20, 1999.

In his first issue, West contends he did not receive adequate notice of the summary judgment hearing because the notice was unsigned and referred only to a "proposed" date and time for hearing. In his third issue, West contends the trial court erred in overruling his motion for new trial. Because these issues are related, we address them together. The threshold issue, however, is the standard to be used in reviewing the motion and the trial court's overruling of that motion.

### *Craddock* Issue

■ The Texas Supreme Court recently addressed the issue of whether the *Crad-*

---

**3.** *See* Tex. Lab.Code Ann. § 451.001 (Vernon 1996) (prohibiting an employer from discharging an employee for filing a workers' compensation claim in good faith).

**4.** West also filed a "Supplemental" motion on February 16, 1999 and a second "Supplemental" motion on March 5, 1999.

*dock* standard [5] applies to a motion for new trial filed after a default summary judgment. *See Bob E. Carpenter v. Cimarron Hydrocarbons Corp.*, 45 Tex. Sup.Ct. J. 1031, 2002 WL 31933987 *2-3 (July 3, 2002). The court held that the *Craddock* rule

> does not apply to a motion for new trial filed after judgment has been granted on a summary-judgment motion to which the nonmovant failed to timely respond *when the movant [for new trial] had an opportunity to seek a continuance or obtain permission to file a late response.*

*Id.* 2002 WL 31933987, *3 (emphasis added). The *Craddock* test, applicable in determining whether to set aside a default judgment, requires a movant for new trial to show that: (1) the defendant's failure to appear was not intentional, or the result of conscious indifference, but was due to mistake or accident; (2) the defendant had a meritorious defense; and (3) the motion for new trial was filed when it would not occasion a delay or otherwise work an injury to the plaintiff. *See Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939).

In *Cimarron*, the defendant moved for summary judgment after the plaintiff's (Cimarron's) counsel withdrew from the case; a hearing on the motion was scheduled. *Cimarron*, 2002 WL 31933987, at *1. After Cimarron obtained new counsel, the parties agreed to reschedule the hearing. *Id.* at *2. Cimarron's counsel instructed an associate to file a response when the hearing was rescheduled. *Id.* Although Cimarron's counsel received notice that the hearing had been rescheduled, he failed to notify the associate. *Id.* Thus, the associate was unaware of the

hearing and failed to file a response. *Id.* Cimarron's attorneys discovered two days before the hearing that no response had been filed, and asked opposing counsel to agree to the late filing of a response or to a continuance of the hearing, but counsel refused. *Id.* at *2. On the day of the hearing, Cimarron filed a proposed response, along with a motion for leave to file an untimely response, and a motion for continuance. *Id.* The trial court denied both motions and granted summary judgment in favor of the defendants. *Id.* Thereafter, Cimarron filed a motion for new trial, which the trial court also denied. *Id.*

On appeal, the Fort Worth Court of Appeals applied the *Craddock* standard and reversed the summary judgment. *Cimarron Hydrocarbons Corp. v. Bob E. Carpenter*, 35 S.W.3d 692, 696 (Tex.App.-Fort Worth 2000), *rev'd*, 45 Tex. Sup.Ct. J. 1031, 2002 WL 31933987, *1-5 (July 3, 2002).

The supreme court reversed, holding that *Craddock* was inapplicable because Cimarron learned of its failure to file a response *before* judgment was rendered, and thus had an opportunity to seek other remedies provided to a defaulting party by the procedural rules (such as a motion for leave to file a late response and a motion for continuance).[6] *Cimarron*, 2002 WL 31933987, at *2-4.

Having determined that *Craddock* was inapplicable to the circumstances before it in *Cimarron*, the supreme court also held that:

> a motion for leave to file a late summary-judgment response should be granted when a litigant establishes good cause for failing to timely respond by showing that (1) the failure to respond

---

**5.** *See Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939).

**6.** *See* Tex.R. Civ. P. 166a(c), 251.

was not intentional or the result of conscious indifference, but the result of accident or mistake, and (2) allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment.

*Id.* at *9. The court held that the trial court did not abuse its discretion in denying Cimarron's motion for leave to file a late response because Cimarron failed to establish good cause by not offering an explanation for its failure to timely respond and by not including supporting affidavits or other evidence with its motion. *Id.*

■ Applying the holding in *Cimarron* to the present case, in order to determine whether *Craddock* is applicable to the denial of West's motion for new trial, we must initially determine whether West had an opportunity before judgment was rendered to seek other remedies provided to a defaulting party by the procedural rules. *See id.* at *9.

West contends he did not receive adequate notice of the summary judgment hearing because the notice was unsigned and referred only to a "proposed" date and time for the hearing. Attached to West's Second Supplemental Motion for New Trial is the affidavit of West's counsel, in which he states that when he received MT's motion for summary judgment and notice of hearing, he understood the date referenced in the notice to be only a *proposed* date, and believed he would later be notified if the proposed date was accepted by the court and the motion set for hearing. It is undisputed that West's counsel received the unsigned notice and letter referencing the "proposed" hearing date prior to the date of the hearing.

West argues that the "notice of hearing" was insufficient because although it referenced a time and date for the hearing, it was not dated and did not include the judge's signature. West cites no authority, however, and we have found none, in support of the proposition that the absence of the judge's signature from a notice setting a hearing under rule 166a(c) invalidates the notice. To the contrary, in *Goode v. Avis Rent–A–Car*, 832 S.W.2d 202, 204 (Tex.App.-Houston [1st Dist.] 1992, writ denied), the First Court of Appeals found that an unsigned order setting a hearing date on a motion for summary judgment was sufficient to provide notice of the hearing. *See id.* West argues *Goode* is distinguishable because: 1) the non-movant in *Goode* timely filed a response to the motion for summary judgment; and 2) the notice in *Goode*, although unsigned by the judge, was signed by opposing counsel, whereas the notice in the present case bore neither the judge's signature nor the signature of opposing counsel. Although we conclude that the statement in *Goode* that an unsigned order provides sufficient notice of a summary judgment hearing is arguably *dicta*, we agree that the absence of a judge's signature on a notice setting a hearing does not, standing alone, invalidate the notice. Moreover, this Court has previously noted that

> [a] letter requesting a specific date for a trial or hearing, at least when a copy of that letter is sent to the opposing parties, is itself sufficient notice of the setting on that date; it is generally reasonable to assume that if a particular setting is requested, the litigants are put on notice that trial or hearing may be had on that requested date. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex.1978).

*Longoria v. United Blood Servs.*, 907 S.W.2d 605, 610 (Tex.App.-Corpus Christi 1995), *rev'd on other grounds*, 938 S.W.2d 29 (Tex.1997).

We hold that the notice received by West's counsel was sufficient to provide notice of the hearing. Accordingly, we overrule West's first issue.

In *Cimarron*, the supreme court briefly discussed various decisions in which the courts of appeals have found *Craddock* applicable in the summary judgment context, and the very limited number of decisions in which courts have refused to do so. *See Cimarron*, 2002 WL 31933987, at *9–10. The *Cimarron* court noted that with one exception, which it disapproved,[7] all of the cases applying *Craddock* were in circumstances where the summary judgment non-movant did not become aware that a response was due until *after* judgment was rendered, and thus "did not have an opportunity before judgment" to pursue other relief provided for in the rules of civil procedure. *Id.* at *3.

■ In the present case, we have already determined that West had notice of the hearing. Accordingly, we hold he had an opportunity before judgment to pursue other relief provided by the rules of civil procedure, and *Craddock* is therefore inapplicable to his motion for new trial. *See id.* at *3–4.

As a general rule, the denial of a motion for new trial that does not contain one of the complaints enumerated in rule 324(b), *see* TEX.R. CIV. P. 324(b), is reviewed for abuse of discretion. *Champion Int'l Corp. v. Twelfth Ct.App.*, 762 S.W.2d 898, 899 (Tex.1988) (orig.proceeding); *Washington v. McMillan*, 898 S.W.2d 392, 394 (Tex. App.-San Antonio 1995, no writ); *Twenty–Four Thousand One Hundred Eighty Dollars in U.S. Currency v. State*, 865 S.W.2d 181, 186 n. 4 (Tex.App.-Corpus Christi 1993, writ denied); *see also* W. Wendall

Hall, *Standards of Review in Texas*, 29 ST. MARY'S L.J. 351, 459–60 (1998) (standard of review depends upon complaint preserved in motion for new trial). A trial court abuses its discretion when it acts without reference to any guiding rules or principles, *Cimarron*, 2002 WL 31933987, at *4 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–242 (Tex.1985)), or when it incorrectly ignores any legal or equitable excuse for the failure to respond. *See Crime Control, Inc. v. RMH–Oxford Joint Venture*, 712 S.W.2d 550, 552 (Tex. App.-Houston [14th Dist.] 1986, no writ). Application of the abuse of discretion standard thus requires a determination of the "guiding rules and principles." *McMillan*, 898 S.W.2d at 394.

As noted, in *Cimarron*, the supreme court discussed the "good cause" standard applicable to a trial court's ruling on a motion for leave to file a late summary judgment response:

> a motion for leave to file a late summary judgment response should be granted when a litigant establishes good cause for failing to timely respond by showing that (1) the failure to respond was not intentional or the result of conscious indifference, but the result of accident or mistake, and (2) allowing the late response will occasion no undue delay or otherwise injure the party seeking summary judgment.

*Cimarron*, 2002 WL 31933987, at *1.

■ Here, West argues he did not learn of the hearing until after judgment had been granted, and therefore, filed a motion for new trial rather than a motion to file a late summary judgment response. We decline to decide whether the "good cause" standard outlined in *Cimarron* is applica-

7. *See Bob E. Carpenter v. Cimarron Hydrocarbons Corp.*, 45 Tex. Sup.Ct. J. 1031, 2002 WL 31933987, at *10 (July 3, 2002) (citing *Medina v. Western Waste Indus.*, 959 S.W.2d 328, 330 (Tex.App.-Houston [14th Dist.] 1997, pet. denied)).

ble in the circumstances before us because under an abuse of discretion standard, either with or without application of the "good cause" guidelines discussed in *Cimarron*, we conclude the trial court did not abuse its discretion in denying West's motion for new trial.

■ West's excuse for his failure to timely file a response and appear at the hearing is that he had neither actual nor constructive notice of the hearing because he understood the notice as merely advising him of a proposed hearing date. We have already determined that West had actual notice of the hearing date. "Actual notice" embraces those things that a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed. *Goode*, 832 S.W.2d at 204 (finding an unsigned order attached to motion for summary judgment and approved by movant's attorney sufficient to provide notice). This Court has previously observed that it is generally reasonable to assume a letter requesting a date for a hearing puts litigants on notice that the hearing may be held on that date. *United Blood Servs.*, 907 S.W.2d at 610.

■ Similarly, we find that West failed to establish "good cause" for his failure to timely respond because he has not shown that such failure was "not intentional or the result of conscious indifference." *See Cimarron*, 2002 WL 31933987, at *1. A failure to appear is not intentional or due to conscious indifference merely because it was deliberate; it must also be without adequate justification. *See Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex.1995). Proof of such justification—accident, mistake, or other reasonable explanation—negates the intent or conscious indifference for which a new trial can be denied. *Id.* We hold that because West had actual notice of the hearing, his failure to respond was without

adequate justification. *See id.* West's excuse does not constitute a "legal or equitable excuse for [his] failure to respond." *See Crime Control*, 712 S.W.2d at 552. We hold the trial court did not abuse its discretion in denying West's motion for new trial. We overrule West's third issue.

### Summary Judgment

In his second issue, West contends the trial court erred in granting summary judgment in MT's favor because MT failed to establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. West argues that MT's summary judgment evidence is insufficient to establish entitlement to summary judgment with regard to West's retaliation and defamation claims.

MT filed a "traditional" summary judgment under rule 166a(c). *See* Tex.R. Civ. P. 166a(c). In reviewing a traditional summary judgment, the moving party has the burden of establishing that no material fact issue exists and it is entitled to judgment as a matter of law. *M.D. Anderson Hosp. and Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex.2000). In determining whether a disputed material fact issue precludes summary judgment, the court must take evidence favorable to the non-movant as true, indulge every reasonable inference in favor of the non-movant, and resolve all doubts in favor of the non-movant. *Id.* Summary judgments must stand on their own merits. *Id.* A nonmovant need not respond to a motion for summary judgment to contend on appeal that the movant's summary judgment proof is legally insufficient. *Id.; City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

Thus, as the movant, MT bears the burden of submitting summary judgment evidence disproving at least one essential element of each of West's causes of action.

*See Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). We now turn to whether the trial court erred in granting summary judgment on West's retaliation claim.

### Retaliatory Discharge

In its motion for summary judgment, MT asserted that:

> there are no facts supporting the elements of a wrongful termination cause of action. Randy West was released to full duty by his surgeon on March 10, 1998. Mr. West did not see [*sic*] further medical attention until April 2, 1998. During that period, he made no attempt to contact his employer. Mack Rodriguez simply filled West's position as allowed by law.

■ Section 451 of the Texas Labor Code prohibits an employer from discharging an employee for filing a workers' compensation claim in good faith. *See* TEX. LAB.CODE ANN. § 451.001 (Vernon 1996). A *prima facie* case of retaliation consists of the following elements: (1) the plaintiff engaged in a protected activity; (2) an adverse employment action occurred; and (3) there was a causal connection between participation in the protected activity and the adverse employment decision. *Azubuike v. Fiesta Mart, Inc.,* 970 S.W.2d 60, 65 (Tex.App.-Houston [14th Dist.] 1998, no pet.). In determining the causal connection, an employee need not show he was fired solely because of the workers' compensation claim. *See Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450–51 & n. 3 (Tex.1996). However, he must establish that "but for" the filing of the claim, the discharge would not have occurred when it did. *Trico Techs. Corp. v. Montiel,* 949 S.W.2d 308, 312 (Tex.1997); *Cazarez,* 937 S.W.2d at 450–51 & n. 3. This purely factual question centers on the employee's conduct and the employer's moti-

vation. *Trevino v. Ramos,* 197 F.3d 777, 780 (5th Cir.1999).

■ An employee has the burden of demonstrating a causal link between the discharge and the filing of a workers' compensation claim. *Garcia v. Allen,* 28 S.W.3d 587, 600 (Tex.App.-Corpus Christi 2000, pet. denied). This causal connection is an element of the employee's *prima facie* case and may be established by direct or circumstantial evidence and by reasonable inferences which may be drawn from such evidence. *Burfield v. Brown, Moore & Flint, Inc.,* 51 F.3d 583, 589 (5th Cir.1995); *Allen,* 28 S.W.3d at 600.

■ Circumstantial evidence sufficient to establish a causal link between termination and filing a compensation claim includes: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Cazarez,* 937 S.W.2d at 450–51; *Allen,* 28 S.W.3d at 600. Once an employee has established the causal link, the employer bears the burden to rebut the alleged improper termination by showing there was a legitimate reason behind it. *Allen,* 28 S.W.3d at 600. Thereafter, in order to survive a motion for summary judgment, the burden shifts back to the employee to produce controverting evidence of a retaliatory motive. *Id.*

■ It is appropriate to first determine how to apply the burden-shifting analysis in the context of a summary judgment. *Jenkins v. Guardian Indus. Corp.,* 16 S.W.3d 431, 441 (Tex.App.-Waco 2000, pet. denied). When an employer files a summary judgment motion, the employee

has not been called on to produce evidence of the employer's motive. *Id.* Only after the employer's summary judgment evidence establishes a legitimate, non-discriminatory reason for the discharge is the employee required to come forward with summary judgment evidence of a retaliatory motive. *Id.* Subjective beliefs are no more than mere conclusions and are not competent summary judgment evidence. *Tex. Div.-Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 314 (Tex.1994).

Here, we construe MT's argument to be that it is entitled to summary judgment because it disproved the causation element of West's cause of action. MT argues that it did not actually terminate West, but rather, "simply filled [his] position as allowed by law."

Appellate review of a trial court's ruling granting a motion for summary judgment is limited to the record as it existed before the trial court at the hearing on the motion. Tex.R. Civ. P. 166a(c); *Havens v. Ayers,* 886 S.W.2d 506, 511 (Tex.App.-Houston [1st Dist.] 1994, no writ). A trial court may consider only the summary judgment evidence on file at the time of the hearing or filed thereafter and before judgment with permission of the court. Tex.R. Civ. P. 166a(c); *United Blood Servs.,* 907 S.W.2d at 609. Accordingly, on motion for new trial after summary judgment is granted, the trial court may generally consider only the record as it existed prior to granting the summary judgment. *United Blood Servs.,* 907 S.W.2d at 609.

A nonmovant may rely on the summary judgment evidence referenced or set forth in the movant's own motion in order to raise a fact issue. Tex.R. Civ. P. 166a(c); *Fisher v. Yates,* 953 S.W.2d 370, 383 (Tex. App.-Texarkana 1997), *pet. denied sub nom., Yates v. Fisher,* 988 S.W.2d 730 (Tex.1998) (per curiam). Because West did not file a response to MT's motion for summary judgment, our review is limited to the summary judgment evidence submitted by MT.

■ MT's summary judgment evidence included: 1) documents from West's medical records; 2) excerpts from West's deposition; 3) affidavits from three MT employees, Anthony "Tony" Rodriguez, Margarito "Mayo" Herrera, and Bobby Davis; 4) excerpts from the deposition of Dr. Tone Johnson, West's treating physician; 5) the affidavit of Mack Rodriguez from MT; 6) Texas Workforce Commission documents concerning West; 7) excerpts from Antonia West's deposition; 8) the affidavit of Rene Rodriguez, MT's counsel; 9) billing statement from the office of Rene Rodriguez regarding West's lawsuit; and 10) a letter dated May 22, 1996 from Rene Rodriguez to West's attorney.

In support of its argument that West cannot establish the causation element, *i.e.,* that he was terminated for filing a workers' compensation claim, MT points to the following:

1) West was released to full duty by his surgeon on March 10, 1998;

2) West did not seek further medical attention until April 2, 1998;

3) during that time, he made no attempt to contact his employer or supervisors;

4) MT filled West's position as allowed by law; and

5) West did not dispute on appeal the TWC finding that he was "discharged due to ... medically verifiable inability to work."

■ An employer is permitted to terminate an employee who sustains an on-the-job injury if that employee can no longer perform the essential functions of his job. *Jenkins,* 16 S.W.3d at 441. The

summary judgment evidence[8] includes a letter dated April 8, 1998 from West's surgeon, Dr. Alberto Belalcazar, to the Texas Workers' Compensation Insurance Fund (TWCIF), which states that West was "fully healed and ready to go back to work" when seen on a follow-up visit on March 10, 1998. The evidence also includes a letter dated the following day, April 9, 1998, from West's treating physician, Dr. Tone Johnson, to the TWCIF reflecting concern that West continued to suffer pain related to his hernia operation. In the April 9 letter, Dr. Johnson recommends that West remain on light duty restrictions for a few more days before returning to full duty.[9] Dr. Johnson released West to return to work on April 13, 1998. It is undisputed that West returned to work on April 13, 1998.

The affidavit of Mack Rodriguez states, in part:

I was also aware that Dr. Alberto Belacazar [sic], Randy West's surgeon, had released him to full duty without restrictions on March 10, 1998. Sometime after receiving this information from the Texas Workers Compensation Insurance Fund, I spoke to Cathy Helms, Benefits Services Department T.W.C.I.F., about this situation. After conversing with Cathy Helms, I filled Randy West's position with another employee. I also sent the attached letter to the Texas Workforce Commission.

The "attached letter" is a Texas Workforce Commission form, completed by Mack Rodriguez, which includes the following explanation regarding West's termination:

Employee left on January 28, 1998 to have surgery on extended workmans [sic] compensation surgery. Mr. West never once checked in to up date us on his progress or as to when he might return or if he would return. We called your office to check on our options and were informed that if we could not hold the position open any longer, we should fill the position & if and when he returned if the position was filled he would have the opportunity to apply for unemployment benefits which would not be chargea[illegible] to us. If you find that this is not the case, please inform me and I will review our position. Thank you for your cooperation.

Thus, MT's position appears to be that West was released to return to work by his surgeon on March 10, 1998 and failed to return until approximately a month later, on April 13, 1998. Although the summary judgment evidence reflects that Dr. Johnson did not release West to return to work until April 13, 1998, there is no evidence that MT knew in late March or early April that West had not been released by Dr. Johnson. Mack Rodriguez's affidavit simply states that after West's surgery, he "never contacted any of his supervisors of his medical status." It also states Rodriguez filled West's position "sometime after" learning of West's release by his surgeon. Even if MT knew that West had not been released by Dr. Johnson, there is no evidence controverting MT's assertion that it filled West's position sometime after learning he had been released by his surgeon and had not returned to work. Thus, we hold that MT's summary judgment evidence established a legitimate, non-dis-

---

8. The only summary judgment evidence in the record is MT's summary judgment evidence. Therefore, all references to "the summary judgment evidence" are to MT's evidence.

9. In his deposition testimony, Dr. Johnson also testified that on April 8, 1998, he placed West on "light duty" for six months because of pain associated with his work-related hernia operation and a non-work-related injury to his arm.

criminatory reason for West's termination. *See Jenkins,* 16 S.W.3d at 436. Because West failed to produce controverting evidence of MT's retaliatory motive, *see id.,* we hold that the trial court properly granted summary judgment on West's retaliation claim.

### Defamation

■ We next address West's contention that the trial court erred in granting summary judgment with regard to his defamation claim. We hold that it did not.

The statements which form the basis of West's defamation claim were made in a letter dated May 29, 1998 from Rene Rodriguez, MT's counsel, to West's counsel.[10] West contends that the statements, which charge West with fraudulently obtaining workers' compensation benefits, are defamatory.

The granting of a summary judgment is proper if the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's causes of action, or whether the defendant has established all elements of an affirmative defense. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996); *Krishnan v. Law Offices of Preston Henrichson, P.C.,* 13–01–204–CV, 83 S.W.3d 295, 303 (Tex.App.-Corpus Christi 2002, no pet. h.) (designated for publication). Summary judgment may be obtained in a defamation case upon a proven plea of privilege. *Krishnan,* 83 S.W.3d at 301.

■ "An attorney's statements made during litigation are not actionable as defamation, regardless of negligence or malice." *Watson v. Kaminski,* 51 S.W.3d 825, 827 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *see also Krishnan,* 83 S.W.3d at 301–02; *Crain v. Smith,* 22 S.W.3d 58, 62–63 (Tex.App.-Corpus Christi 2000, no pet.). The judicial proceeding privilege applies to letters written by lawyers to potential defendants prior to suit. *Krishnan,* 83 S.W.3d at 301–02; *Crain,* 22 S.W.3d at 62. To trigger the absolute privilege, there must be a relationship between the correspondence and the proposed or existing judicial proceeding, which decision is made by considering the entire communication in context, resolving all doubts in favor of its relevancy. *Krishnan,* 83 S.W.3d at 302; *Crain,* 22 S.W.3d at 63. Resolving all doubt in favor of the communication's relevancy to a pending and contemplated proceeding, *see Krishnan,* 83 S.W.3d at 303, we conclude that the statements in the letter were absolutely privileged, and cannot constitute the basis for a defamation claim against MT or its counsel. Accordingly, we hold that the trial court did not err in rendering summary judgment in MT's favor with regard to the defamation claim.

### Sanctions

■ In his fourth issue, West challenges the trial court's order imposing sanctions pursuant to rule 13 because (a) it fails to state grounds for holding West's counsel in contempt and (b) fails to state with particularity good cause for finding that the pleadings upon which sanctions are based are groundless and frivolous and

---

**10.** The letter was attached as an exhibit to West's original petition and to his "Supplemental Motion to Withdraw Order Granting Summary Judgment and Rule 13 Sanctions and Motion for New Trial," filed February 16, 1999. The letter was not included in the summary judgment evidence attached to MT's motion for summary judgment. Included in MT's summary judgment evidence, however, was an affidavit of Rene Rodriguez, MT's counsel, in which he states that the May 29, 1998 letter was mailed only to West's counsel and Dr. Johnson.

brought for purposes of harassment. *See* Tex.R. Civ. P. 13.

■■■ MT argues that by failing to object to the form of the sanctions order, West waived any error concerning the sanctions order. However, in West's motion for new trial and supplemental motions for new trial,[11] he denies that his claims constitute groundless pleadings. Specifically, he addresses the evidence supporting his claims of retaliation and defamation and argues that his claims are meritorious. Thus, we construe West's complaint as challenging both the form of the order by questioning its failure to meet the particularity requirements of rule 13, and the sufficiency of the evidence to support the imposition of sanctions. We hold that West's challenge to the sanctions order was preserved through his motion for new trial. *See Gorman v. Gorman,* 966 S.W.2d 858, 867 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (party against whom sanctions were imposed preserved complaint by filing motion for new trial).

A trial court's decision to impose sanctions is reviewed for an abuse of discretion. *GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 730 (Tex.1993); *Home Owners Funding Corp. of Am. v. Scheppler,* 815 S.W.2d 884, 889 (Tex.App.-Corpus Christi 1991, no writ). A trial court abuses its discretion when it acts without reference to any guiding legal rules or principles or misapplies the law to the established facts of the case. *Scheppler,* 815 S.W.2d at 889 (citing *Downer,* 701 S.W.2d at 241–42). In determining whether sanctions are appropriate, the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Alejandro v. Bell,* 84 S.W.3d 383, 392 (Tex.

App.-Corpus Christi 2002, no pet. h.) (designated for publication). Rule 13 requires that the trial court provide notice and hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person filing the groundless pleading. *Id.* (citing *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 856 S.W.2d 194, 205 (Tex. App.-Dallas 1993, no writ); *Scheppler,* 815 S.W.2d at 888–89). Without such a hearing, the trial court has no evidence before it to determine that a pleading was filed in bad faith or to harass. *Id.* Imposing sanctions without the requisite notice and hearing also violates the requirements of due process. *Id.*

MT's motion for sanctions alleges only that West's lawsuit is groundless and brought "in bad faith and for purposes of harassment." At the hearing in which the trial court granted summary judgment and sanctions, the record reflects no discussion of any allegedly sanctionable conduct. No evidence supporting the imposition of sanctions was introduced. Similarly, at the hearing on West's motion for new trial, the parties focused on West's argument that he did not receive notice of the hearing and was thus entitled to a new trial; there was no discussion of the sanctions issue and no evidence to support sanctions was introduced. Because MT presented no evidence from which the trial court could determine that West filed his lawsuit in bad faith or for purposes of harassment, we hold the trial court abused its discretion in ordering sanctions in the amount of $21,095 against West's counsel. We sustain West's fourth issue.

### Conclusion

We hold the trial court abused its discretion in imposing sanctions against

---

11. West filed a "Motion to Withdraw Order Granting Summary Judgment and Rule 13 Sanctions and Motion for New Trial" on February 5, 1999. He filed a "Supplemental" motion on February 16, 1999 and a second "Supplemental" motion on March 5, 1999.

West's counsel. Therefore, we RE-VERSE the trial court's order imposing sanctions against West's counsel, and otherwise AFFIRM the trial court's judgment.

Retired Chief Justice SEERDEN[12] not participating.

---

12. Retired Chief Justice Robert J. Seerden was a member of the panel which originally heard this case when it was submitted on May 3, 2000. Following his retirement on December 31, 2000, he was assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998) to "complete the adjudication of any and all causes assigned to a panel of which [he was] a member" prior to his retirement. Justice Seerden has chosen not to participate in this Court's decision.