NUMBER 13-03-00244-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

 

KEVIN DANIEL,                                                                                 Appellant,

 

                                                             v.

 

GOODMAN MANUFACTURING COMPANY,
L.P.,                           Appellee.

 

     On appeal from the 129th District Court of Harris County,
Texas.

                                       

                       MEMORANDUM OPINION

 

      Before Chief Justice Valdez and Justices Hinojosa and
Castillo

                         Memorandum
Opinion by Justice Hinojosa

 








This is an appeal from a summary judgment
rendered in favor of appellee, Goodman Manufacturing Company, L.P. (AGoodman@), in a workers= compensation retaliatory discharge suit
brought by appellant, Kevin Daniel.[1]  In two issues, appellant contends the trial
court erred in granting Goodman=s motion for summary judgment because (1)
there was more than a scintilla of evidence establishing a causal link between
his workers= compensation claim and Goodman=s decision to fire him, and (2) there was
evidence of malice.  We affirm.

                                                   A.  Factual
Background

Goodman is a Houston-based company that
manufactures air conditioners and heaters. 
Daniel started working for Goodman on November 13, 1998, on the assembly
line in the coil department at one of Goodman=s Houston manufacturing plants.








On November 29, 2000, Daniel sustained an
on-the-job injury.  Daniel reported his
injury to his supervisor and was transported to an emergency room for
treatment.  On November 30, 2000, Daniel
went to see the company doctor and his own doctor, Dr. Patel.  Dr. Patel gave Daniel a work excuse form, which
was presented to Pat Alcorn, Goodman=s workers= compensation claims supervisor.  Alcorn filed a workers= compensation claim for Daniel on November
30, 2000, and Daniel was granted a leave of absence under Goodman=s AMedical Leave of Absence Policy@ for Family Medical Leave Act (AFMLA@) eligible employees.  Under this policy, Daniel was required Ato contact the Human Resources Department no
less than once a week in order to keep the Company advised of his/her
progress and likely return date.@  On November 30, 2000, Goodman sent Daniel, via certified mail, a copy of Goodman=s leave of absence policy stating the terms
and conditions that had to be satisfied to continue his medical leave of
absence status and to remain an employee.

Dr. Patel released Daniel to return to work
on February 25, 2001, after the expiration of the twelve-week period provided
in Goodman=s FMLA leave policy.  Daniel attempted to deliver the release form
to Alcorn on either February 22 or February 23, 2001, but Alcorn was not at the
Goodman office.  Daniel spoke with Alcorn=s assistant, Kristi Kwiatkowski, who told
him to call Alcorn on Monday, February 26. 
After several unsuccessful attempts to contact Alcorn, Daniel received a
call from Gerald Pierce, who told Daniel that he would be placed on a waiting
list and that he should file for unemployment benefits.  Daniel subsequently filed for and received
unemployment benefits.  In his
deposition, Cliff Reilly, Vice President of Human Resources for Goodman,
explained that when Daniel was released to return to work, Goodman did not have
any open positions.

On May 14, 2001, Reilly sent Daniel a letter
together with a copy of the Medical Leave of Absence Policy for employees who
had exceeded their FMLA allotment.  The
letter referred to the November 30, 2000 letter that Goodman had previously
sent to Daniel via certified mail, informing him that he had to contact Pat
Alcorn each week or he would be subject to termination for non-compliance with
company policy.








On June 13, 2001, Goodman sent Daniel
another letter, together with another copy of the Medical Leave of Absence Policy.  This letter informed Daniel that he had to
contact Pat Alcorn within five business days or he would be terminated for
failure to comply with company policy. 
On June 26, 2001, Reilly terminated Daniel because he refused to comply
with Goodman=s Medical Leave of Absence Policy.

Daniel filed suit against Goodman on April
30, 2001, alleging that Goodman had discharged him in retaliation for filing a
workers= compensation claim, in violation of section
451.001 of the Texas Labor Code.  Daniel
claimed that because the retaliation was motivated by ill will, spite, or
specific intent to cause injury, he was entitled to exemplary damages.

Goodman denied Daniel=s allegations.  Goodman filed a traditional and no-evidence
motion for summary judgment asserting that Daniel (1) could not establish a
prima facie case  of retaliation and (2)
could not produce evidence to controvert Goodman=s legitimate, nondiscriminatory reason for
Daniel=s termination B that his termination was based on his
failure to comply with the call-in requirement set out in Goodman=s Medical Leave of Absence Policy.  In support of its motion for summary
judgment, Goodman attached Daniel=s deposition and all exhibits attached
thereto, and Reilly=s deposition and all exhibits attached
thereto.

In response to Goodman=s motion for summary judgment, Daniel argued
that there were genuine issues of material fact regarding whether Goodman=s actions constituted workers= compensation retaliation.  In support of his response, Daniel attached
(1) his own affidavit, (2) Sylvester McFarland=s affidavit, (3) Houston Chronicle records,
and (4) the depositions of Andrew Little, Rotley Gilliam, and Pat Alcorn.

On January 8, 2003, the trial court granted
Goodman=s summary judgment and rendered a
take-nothing judgment against Daniel.








                                                     B.  Standard
of Review

Goodman moved for summary judgment on both
traditional and no-evidence grounds.  See
Tex. R. Civ. P. 166a(c),
(i).  The standard of review for a traditional
motion for summary judgment  is well
established.  See Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985); Alejandro v.
Bell, 84 S.W.3d 383, 390 (Tex. App.BCorpus Christi 2002, no pet.).  The
standard of review for a no-evidence motion for summary judgment is also well settled.  See King Ranch v. Chapman, 118 S.W.3d
742, 750 (Tex. 2003); Wal‑Mart Stores, Inc. v. Rodriguez, 92
S.W.3d 502, 506 (Tex. 2002).  Under both theories, Goodman argued that
Daniel did not offer sufficient evidence of a causal link between the adverse
employment action and his claim for workers= compensation benefits.

                                                      C.  Causal
Connection

                                                              1.  Applicable Law








Section 451.001 of the Texas Labor Code
prohibits an employer from discharging an employee because he filed a workers= compensation claim in good faith.  See Tex.
Lab. Code Ann. ' 451.001 (Vernon 1996).  To prevail on a
section 451.001 cause of action, the plaintiff must establish a prima facie
case by demonstrating that (1) he engaged in a protected activity, (2) an
adverse employment action occurred, and (3) there was a causal connection
between participation in the protected activity and adverse employment
action.  West v. Maint. Tool &
Supply Co., 89 S.W.3d 96, 105 (Tex. App.BCorpus Christi 2002, no pet.).  In establishing a causal connection, an
employee does not need to show that he was terminated solely because he filed a
workers= compensation claim, but rather that his
termination would not have occurred when it did Abut for@ the filing of the claim.  See Cont=l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450-51 & n.3 (Tex.
1996); West, 89 S.W.3d at 105. 
This causal connection may be established by direct or circumstantial
evidence and by reasonable inferences which may be drawn from such
evidence.  Cazarez, 937 S.W.2d at
451; West, 89 S.W.3d at 105. 
Circumstantial evidence sufficient to establish a causal link includes
(1) knowledge of the compensation claim by those making the decision to
terminate the employee, (2) expression of a negative attitude toward the
employee=s injured condition, (3) failure of the
employer to adhere to established company policies, (4) discriminatory
treatment of the employee compared to other similarly situated employees, and
(5) evidence that the reason provided for the discharge was false.  Cazarez, 937 S.W.2d at 451.

                                                                    2.  Analysis

In his first issue, Daniel contends there is
more than a scintilla of evidence to establish a causal link between his
workers= compensation claim and his subsequent
termination by Goodman.  Goodman argues
there is no evidence that Daniel=s termination was temporally or causally
linked to his workers= compensation claim.








Given the proper standard of review, we must
determine whether any evidence presented by Daniel raises a genuine issue of
material fact on the question of whether, but for Daniel=s filing of a workers= compensation claim, Goodman would have
terminated Daniel when it did.  Cazarez,
937 S.W.2d at 450-51.  It is undisputed
that Goodman had knowledge of Daniel=s workers= compensation claim.  However, knowledge of the claim alone is not
enough to raise a fact issue as to whether Daniel was wrongfully terminated
because he filed the claim.  See
Garcia v. Allen, 28 S.W.3d 586, 601 (Tex. App.BCorpus Christi 2000, no pet.).  It simply places the plaintiff within the
protected class and must be considered with the remaining evidence.  Id.

                                             a.  Medical Leave of Absence Policies

Daniel contends that Goodman=s stated reason for discharging him, the
uniform application of Goodman=s neutral absence control policies, was
false.  Under Goodman=s Medical Leave of Absence Policies, A[d]uring a Medical Leave of Absence, the
employee must contact the Human Resources Department no less than once a
week in order to keep the Company advised of his/her progress and likely
return date.@

Daniel contests that aspect of Goodman=s policy that requires employees to continue
calling in even after they are released from medical care and argues that even
if such a policy did exist, the policy was not enforced.  Furthermore, he contends he was not
terminated as a result of the uniform application of the policy because (1)
there is evidence that Goodman had open positions when he attempted to return
to work, but Goodman did not attempt to return him to work, in violation of the
policy, and (2) a jury could infer that he was terminated in February 2001,
prior to his failure to call in.

Although Daniel admits he was aware of
Goodman=s call-in policy, and he abided by the
policy while on a previous medical leave of absence from September 1999 through
January 2000, he argues that Goodman=s leave of absence policies do not require
an employee to continue to call in after the employee returns from leave and
seeks to return to work.  The evidence,
however, indicates that Daniel was still on leave when he was released by his
doctor to return to work.








The policy states that when an employee
presents a written physician=s statement releasing him to return to work,
Athe Company will then attempt to
return you to work if there is an open position, which you would be
qualified to perform.@ 
Because there were no open positions on February 25, 2001, when Daniel
was released to return to work, in accordance with the policy, he was Acontinued on the Company records as an
active employee until such an alternative job becomes available up to a maximum
of six (6) months from the start of leave.@

Reilly testified that within that six month
period, an employee on leave has a duty to call in to Goodman on a regular
basis.   Alcorn said it was company
policy that when anyone was out on any type of leave, they had a duty to call
in weekly.  Daniel was reminded of this
policy by letter on May 14, 2001, and again on June 13, 2001.  Daniel admits that (1) he called Alcorn
following receipt of the May 14 letter and questioned the call-in requirement,
and (2) Alcorn simply informed him, once again, that he was required to call
in.

                                             b.  Enforcement of Call-In Requirement

Daniel contends that the call-in requirement
was not enforced.  In support of this
contention, Daniel points to the absence of any reminder letters between
February 27, 2001 and May 14, 2001, warning him that he would be terminated if
he failed to call in.  However, Alcorn
explained that she was on a leave of absence from March 5, 2001 until the first
week of May 2001, and reminder letters were delayed due to her absence.  She said that the policy was still uniformly
applied B everyone simply got a two-month grace period.  As soon as she returned to work, the reminder
letters were sent out.








Daniel points us to the testimony of two
former employees, Rotley Gilliam and Sylvester McFarland, to show that Goodman
failed to adhere to the call-in requirement. 
Gilliam said he was never informed that he was required to call in when
he sustained an on-the-job injury, and McFarland said that in February 2001,
Alcorn told him it was not necessary to call in anymore.  However, Daniel failed to provide evidence
showing that he was similarly situated to these employees.  For employees to be similarly situated, their
circumstances must be "nearly identical" in all relevant
respects.  See Winters v. Chubb &
Son, Inc., 132 S.W.3d 568, 578 (Tex. App.BHouston [14th Dist.] 2004, no pet.); Wyvill
v. United Cos. Life Ins. Co., 212 F.3d 296, 304‑05 (5th Cir.
2000).  In fact, the evidence shows that
Gilliam was never placed on a medical leave of absence during the time he
worked for Goodman.  Therefore, Gilliam
was not subject to the call-in requirement.

                                                              c.  Open Positions








Daniel contends that Goodman=s stated reason for his discharge was
pretextual.  He argues that there were
open positions when he was released to return to work.  In support of this contention, Daniel relies
on the testimony of Andrew Little, a former Goodman supervisor who ceased
working at Goodman in April 2001, to establish that there were openings on the
assembly line.  Little testified that
there were openings on the assembly line from early February through April
2001, including Ascrew gun operators, coil tables, operators,
anything.@ 
Daniel also testified that based on his observations, approximately five
people on each shift would quit each month and were replaced.  However, Little also testified that the
positions that were open were probably not filled, but left open.  Furthermore, Goodman established that no
workers were hired on the assembly line from the summer of 2000 until August or
September of 2001.

Daniel also relies on two classified ads in
the Houston Chronicle, dated January 28, 2001 and June 3, 2001, seeking a
maintenance mechanic.  However, Daniel
provided no evidence that he was qualified as a maintenance mechanic.

Although Daniel presented some evidence that
Goodman had open positions when he was released to return to work, he presented
no evidence that Goodman did not attempt to place him in an open position as
required by its policy, or that Goodman treated him differently from other
employees in the same position.  In fact,
the evidence establishes that Goodman placed Daniel on a waiting list, and that
Goodman was not hiring to fill Daniel=s prior position.

                                                                d.  Jury Inference

Daniel contends that a jury could infer that
he was terminated in February 2001, when he presented his release to return to
work and was informed that (1) there were no open positions, (2) he would be
placed on a waiting list, and (3) he should file for unemployment.  Daniel asserts that, based on these facts, he
felt that his employment was terminated at this point.  However, these facts do not lead to a
reasonable inference that he was terminated. 
What the facts do establish is that Daniel knew of Goodman=s policy that he would return to work if
there was an open position and that he knew he was required to call in during
his leave of absence.  The evidence
establishes that Daniel was terminated on June 26, 2001, because he failed to
call in as required.








We conclude that Daniel has failed to
establish the existence of an issue of genuine material fact regarding whether
he was terminated for filing his workers= compensation claim.  Accordingly, the trial court did not err in
granting Goodman=s motion for summary judgment.  Daniel=s first issue is overruled.

                                                                    D. 
Malice

In his second issue, Daniel contends the
trial court erred in rendering summary judgment for Goodman because there is a
genuine issue of material fact as to whether Goodman acted with malice and,
therefore, whether he should be awarded exemplary damages.  However, because we have determined Goodman
was entitled to judgment as a matter of law on Daniel=s retaliatory discharge claim, Daniel=s second issue necessarily fails.[2]  Accordingly, we overrule Daniel=s second issue.

We affirm the trial court=s order granting Goodman=s motion for summary judgment.

 

FEDERICO G. HINOJOSA

Justice

 

 

Memorandum
Opinion delivered and filed this

the
8th day of September, 2005.











[1]
This appeal is a
transfer case from the Fourteenth Court of Appeals in Houston.  We note that a case involving the same
appellee/defendant Goodman Manufacturing Company, L.P., the same attorneys, the
same witnesses, and similar facts was recently decided by the First Court of
Appeals.  See McFarland v. Goodman
Mfg. Co., No. 01-03-00502-CV, 2004 Tex. App. LEXIS 5148 (Tex. App.BHouston [1st Dist.] Jun.
10, 2004, no pet.) (not designated for publication).    





[2]
An employee can
recover punitive or exemplary damages only if a court finds that the employer
engaged in an unlawful retaliatory practice with actual malice.  See  Tex.
Lab. Code Ann. ' 451.002 (Vernon 1996);
Cont=l Coffee Prods. Co. v.
Cazarez,
937 S.W.2d 444, 454 (Tex. 1996).