Juan LONGORIA and Maria Longoria, Individually and as Next Friend of San Juanita Longoria, Appellants,

v.

UNITED BLOOD SERVICES, Appellee.

No. 13–93–005–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 3, 1995.

Rehearing Overruled Aug. 21, 1995.

Richard C. Arroyo, Brownsville, Melinda Garza, Weslaco, for appellants.

Terry D. Totterham, Dean A. Schaffer, Fulbright & Jaworski, Austin, Jose E. Garcia, McAllen, for appellee.

Before GILBERTO HINOJOSA,[1] FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

The Longorias appeal from the second summary judgment granted against them in their suit against United Blood Services (UBS) for the death of their daughter as a result of acquired immune deficiency syndrome-tainted blood given to her in a transfusion. We reversed the first summary judgment on the ground that, although the movants had conclusively disproved any negligence in failing to screen their blood for acquired immune deficiency syndrome (AIDS) at the time of the transfusion, a fact issue remained concerning their potential negligence in failing to screen for other diseases, which indirectly could have prevented those at high risk for AIDS from donating blood and probably prevented the blood from becoming contaminated with AIDS.[2]

Upon remand, UBS again moved for summary judgment, this time presenting expert medical evidence that it was not negligent in failing to screen for other diseases, such as cytomegalovirus (CMV) or hepatitis. In addition, UBS challenged the Longorias' supposed expert, Melvin N. Kramer, as being unqualified to make assertions about the standard of care for blood banks and the screening of blood donors. UBS also urged for the first time the two-year statute of limitations as a bar to the present action.

1. Former Justice Gilberto Hinojosa not participating.

2. A more complete statement of the facts of the case and the procedural history of the first motion for summary judgment is available in *Longoria v. McAllen Methodist Hospital*, 771 S.W.2d 663 (Tex.App.—Corpus Christi 1989, writ denied).

The trial court granted the second summary judgment in favor of UBS on all claims asserted against it by the Longorias. The Longorias raise six points of error on appeal, arguing numerous errors in the procedure and the existence of fact questions precluding summary judgment. We reverse the second summary judgment and remand the case to the trial court for trial on the merits.

We first address the procedural questions raised by the Longorias concerning the hearing of UBS's second motion for summary judgment and the alleged errors affecting our review of the summary judgment evidence and the state of the pleadings at the time of the summary judgment.

By their fourth point of error, the Longorias complain that the trial court erred by refusing to consider additional evidence presented after the summary judgment had already been determined.

The present summary judgment order was signed on September 8, 1992. The Longorias then filed an unsworn motion for new trial on October 2, 1992, urging among other things that the trial court consider new evidence. The Longorias attached to the motion for new trial the depositions of two physicians who were deposed after the trial court took the motion for summary judgment under consideration. One physician testified concerning his knowledge of the procedures used by UBS in collecting blood. The other physician testified as an expert on hospital testing of blood. The Longorias urged the trial court to consider this new evidence.

A trial court may consider only the summary judgment evidence on file at the time of the hearing or filed thereafter and before judgment with permission of the court. *Leinen v. Buffington's Bayou City Service Co.*, 824 S.W.2d 682, 685 (Tex.App.—Houston [14th Dist.] 1992, no writ); Tex. R.Civ.P. 166a(c). Accordingly, on motion for new trial after summary judgment is granted, the trial court may generally consider only the record as it existed prior to granting the summary judgment. *Leinen*, 824 S.W.2d at 685; *Parchman v. United Liberty Life Ins. Co.*, 640 S.W.2d 694, 696 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). Moreover, if the Longorias rely on newly

discovered evidence as justification for a new trial, they must meet the due diligence requirement that such evidence could not have been obtained before the summary judgment hearing. *See Mendez v. International Playtex, Inc.*, 776 S.W.2d 732, 734 (Tex.App.—Corpus Christi 1989, writ denied).

In the present case, the Longorias' unsworn motion for new trial failed to show that either physician's testimony was unavailable to them before the second summary judgment hearing or that the depositions could not have been presented earlier. The two physicians' depositions were not properly before the trial court and could not be considered as new evidence. In addition, the depositions may not be considered by us on appeal. Appellants' fourth point of error is overruled.

By their fifth point of error, the Longorias complain that they were not given proper notice of the summary judgment hearing.

A non-movant is generally entitled to at least twenty-one days' notice before the date specified for hearing the motion for summary judgment. *See Lewis v. Blake*, 876 S.W.2d 314, 316 (Tex.1994); *Negrini v. Beale*, 822 S.W.2d 822, 823 (Tex.App.—Houston [14th Dist.] 1992, no writ); Tex.R.Civ.P. 166a(c).

After reviewing the record, we conclude that the Longorias waived their right to complain of lack of notice by failing to bring this complaint to the attention of the trial court by motion for new trial or other post-trial motion. *See Lara v. Lile*, 828 S.W.2d 536, 542 (Tex.App.—Corpus Christi 1992, writ denied); *White v. Wah*, 789 S.W.2d 312, 319 (Tex.App.—Houston [1st Dist.] 1990, no writ); Tex.R.App.P. 52(a). Nevertheless, even if the Longorias had preserved their complaint of lack of notice, we conclude that the complaint is without merit. The record reflects that UBS sent a letter to the court, dated May 11, 1992, requesting a June 5, 1992 hearing on its second motion for summary judgment and that a copy of the letter was sent to the Longorias' counsel. The record also includes a May 12, 1992

letter stating that the motion was set for hearing on June 5, 1992 at 8:30 a.m.[3]

A letter requesting a specific date for trial or hearing, at least when a copy of that letter is sent to the opposing parties, is itself sufficient notice of the setting on that date; it is generally reasonable to assume that if a particular setting is requested, the litigants are put on notice that trial or hearing may be had on that requested date. *Mansfield State Bank v. Cohn,* 573 S.W.2d 181, 185 (Tex. 1978). In addition, as in the present case, a further letter indicating that the hearing is actually set for that date is additional notice of the setting. Appellants' fifth point of error is overruled.

By their sixth point of error, the Longorias complain that the trial court erred by granting special exceptions to their Fifth Amended Original Petition (5th Amended Petition).

The Longorias' Third Amended Original Petition (3rd Amended Petition) was filed on April 3, 1987 and constituted their live pleading at the time of the summary judgment hearing. On May 8, 1992, UBS filed special exceptions to the 3rd Amended Petition, and on August 3, 1992, the trial court heard those special exceptions concurrently with the summary judgment. On August 11, 1992, the trial court signed an order granting UBS's special exceptions and ordering amendment in conformity thereto by August 15, 1992. The Longorias immediately filed their 5th Amended Petition[4] on August 11, 1992. On August 28, 1992, UBS filed special exceptions to the Longorias' 5th Amended Petition together with a letter stating that UBS intended to urge the special exceptions at an August 31, 1992 hearing. The 5th Amended Petition and letter indicate that opposing counsel was provided copies. On August 31, 1992, the trial court heard and signed an order granting UBS's special exceptions to the Longorias' 5th Amended Petition. Thereafter, on September 9, 1992, the Longorias moved the trial court to reconsider the granting of special exceptions, but never mentioned in the motion or in their motion for new trial that they were urging lack of notice as a reason for the trial court to reconsider its rulings.

The Longorias complain that the trial court erred by granting UBS's special exceptions to their 5th Amended Petition after hearing the motion for summary judgment but before signing the order granting summary judgment. The Longorias argue that they never received notice of the August 31, 1992 hearing. The Longorias also argue that the trial court was substantively wrong in sustaining the special exceptions and striking that portion of the 5th Amended Petition that newly raised UBS's alleged violation of federal regulations as a ground for liability.

With regard to the Longorias' alleged lack of notice of the hearing, we again conclude that, as with similar claims regarding the summary judgment hearing discussed in our analysis of point five, the Longorias waived this complaint by failing to raise it in the trial court. *See Lara,* 828 S.W.2d at 542; *White,* 789 S.W.2d at 319; Tex.R.App.P. 52(a). Moreover, even if their complaint was not waived, the clear indication in UBS's letter that it was requesting a hearing on August 31, 1992 should have been sufficient to put the Longorias on notice that the hearing would be held that day. *See Mansfield State Bank,* 573 S.W.2d at 185.

With regard to the alleged substantive error in sustaining special exceptions to the violation of federal regulation allegations, we note that these alleged violations were mentioned for the first time in the Longorias' 5th Amended Petition which was filed after the summary judgment hearing. The trial court may only consider pleadings and proof on file at the time of the summary judgment hearing, or filed thereafter and before judgment with permission of the court. Tex.R.Civ.P. 166a(c). Accordingly, a trial court does not abuse its discretion by refusing to consider summary judgment pleadings filed after a summary judgment hearing without leave of court. *Leinen,* 824

---

3. The order granting summary judgment, however, is dated September 8, 1992 and reflects that UBS's second motion for summary judgment was heard by the trial court on August 3, 1992.

4. It appears that the Longorias mistakenly captioned this pleading their Fifth Amended Original Petition when it properly should have been captioned their Fourth Amended Petition.

S.W.2d at 685. In the present case, the Longorias' allegations concerning violations of federal regulations were not before the trial court at the time of the summary judgment hearing, and on that ground alone were properly disregarded. Appellants' sixth point of error is overruled.

By their second point of error, the Longorias complain that this Court's decision in the appeal of the first summary judgment is the law of the case.

■■■ The "law of the case" doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986); *Dieter v. Baker Service Tools,* 776 S.W.2d 781, 783 (Tex.App.—Corpus Christi 1989, writ denied). The "law of the case" doctrine only applies to questions of law and does not apply to questions of fact. In addition, the doctrine does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those involved in the first appeal. Thus, when in the second trial or proceeding, one or both of the parties amend their pleadings, it may be that the issues or facts have sufficiently changed so that the law of the case no longer applies. *Hudson,* 711 S.W.2d at 630.

■■■ We acknowledge that the law of the case doctrine compels us to be consistent in our analysis of the legal questions involved in the prior and present appeals. The reversal of a summary judgment does not prevent a movant from subsequently filing and prevailing upon a second motion for summary judgment in which the movant has cured whatever deficiencies were noted by the appellate court in connection with a first motion for summary judgment. *See Dieter.* We do not view the "law of the case" doctrine as any impediment per se to the granting of a second motion for summary judgment.

■■■ After reviewing the record, we conclude that UBS's second motion for summary judgment attempts to comply with our pronouncements in *Longoria v. McAllen Methodist Hospital,* 771 S.W.2d 663 (Tex.App.—Corpus Christi 1989, writ denied), and attempts to cure the deficiencies we noted therein in connection with UBS's first motion for summary judgment. Appellants' second point of error is overruled.

By their third point of error, the Longorias complain that fact issues remain to defeat the summary judgment.

■■■ A movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true, doubts will be resolved in the non-movant's favor, and every reasonable inference will be indulged in the non-movant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The issue is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Sakowitz, Inc. v. Steck,* 669 S.W.2d 105, 107–08 (Tex.1984); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

■■■ In a case involving medical or professional negligence, the standard of care is a threshold question which the defendant may successfully disprove on summary judgment only by offering uncontroverted expert testimony showing the specific standard of care and proving that the complained-of actions were within that standard. *See Gonzales v. Outlar,* 829 S.W.2d 931, 934 (Tex.App.—Corpus Christi 1992, no writ); *Gibson v. Methodist Hospital,* 822 S.W.2d 95, 98–100 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

After our remand of the first summary judgment, the Longorias' remaining theory of recovery was that UBS failed to properly screen or test the blood in question against some disease other than AIDS, and that this failure indirectly resulted in the blood's becoming infected with AIDS and CMV, which together caused the child's death.

In its second motion for summary judgment, UBS offered additional evidence from

its medical experts to disprove the Longorias' remaining theory of recovery. UBS offered summary judgment evidence in the form of affidavits and deposition testimony from several physicians concerning the standard of care in 1982 and the screening and testing procedures available for blood at that time.

The affidavit of John D. Milam, M.D., states that in 1982 there was no test for AIDS in the blood supply and that UBS did not violate the standard of care for community blood banks in that regard.

Hematologist Ernest R. Simon, M.D., who has had extensive experience in the operation of blood banks, testified by deposition that virtually all human adults are CMV positive and that there was, to his knowledge, no commercially available test in 1982 for the presence of CMV in blood. UBS also attached Simon's affidavit as summary judgment evidence. Simon's affidavit states that he was aware of the standard of care for community blood banks in 1982 for the screening of blood donors and the obtaining, screening and testing of blood donated for transfusion purposes, provides a list of the standard tests and screening methods commonly used at the time, and concludes that UBS complied with that standard of care with regard to the blood allegedly provided to San Juanita Longoria. Specifically, Simon concludes that in 1982, UBS did not negligently fail to screen for AIDS or CMV.

UBS also attached the affidavit of Ronald G. Strauss, M.D. Dr. Strauss' affidavit states that in 1982 there was no standard of care for a blood bank to test or screen blood for CMV prior to transfusion into newborns; nor were there procedures available in 1982 to test or screen blood for exposure to the AIDS virus; nor was it even known in July of 1982 that the AIDS virus could be transmitted by blood transfusion.

The Longorias have attempted to controvert UBS's evidence that it met the relevant standard of care and to raise fact issues concerning the necessity for certain tests and screening procedures that were not performed in the present case, by presenting affidavits of their own expert, Melvin N. Kramer. Kramer's first affidavit, filed in October 1987, states that CMV testing and screening could and should have been performed on the blood in question in 1982 and that, because the donors at risk for CMV and other such diseases are generally the same group that is at risk for AIDS, (*i.e.*, homosexuals, bisexuals, and intravenous drug users) if these individuals had been excluded from the donor pool, then "to a reasonable degree of epidemiological probability" the blood in question would not have been infected with the AIDS virus.

By supplemental affidavit, filed after remand on May 26, 1992, Kramer reiterated his opinion 1) that the blood industry should have interviewed and excluded homosexuals, bisexuals and intravenous drug users because they were at high risk for certain infectious diseases that were known in 1982, 2) that tests should have been performed on the blood in question to screen out hepatitis-infected blood, 3) that tests were available in 1982 and blood banks were negligent in not testing for CMV, and 4) that screening donors and testing would probably have prevented the Longoria child from receiving blood infected with either CMV or AIDS.

The central question raised under this point of error is whether Kramer was qualified as an expert to offer his controverting opinion that UBS failed to meet the relevant standard of care in the blood banking industry.

Under TEX.R.CIV.EVID. 702, the party offering an expert's testimony has the burden of establishing that the expert is qualified, *i.e.*, that the expert possesses a higher degree of knowledge than an ordinary person or the trier of fact. *James v. Hudgins*, 876 S.W.2d 418, 421 (Tex.App.—El Paso 1994, writ denied); *ITT Commercial Finance Corp. v. Riehn*, 796 S.W.2d 248, 250 (Tex.App.—Dallas 1990, no writ); *see also E.I. DuPont de Nemours and Co. v. Robinson*, 38 Tex.Sup.Ct.J. 852, 856, —— S.W.2d ——, —— [1995 WL 359024] (June 15, 1995). This burden may only be met by showing that the expert is trained in the science of which he or she testifies or has knowledge of the subject matter of the fact in question. *James*, 876 S.W.2d at 421; *Missouri Pacific*

*R.R. Co. v. Buenrostro,* 853 S.W.2d 66, 77 (Tex.App.—San Antonio 1993, writ denied); *Rogers v. Gonzales,* 654 S.W.2d 509, 512 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Generally, however, there are no definite guidelines to determine whether a witness's education, experience, skill, or training qualifies the witness as an expert, and such a determination is left to the trial court's discretion. *James,* 876 S.W.2d at 421; *ITT Commercial Finance Corp.,* 796 S.W.2d at 250; *Trailways, Inc. v. Clark,* 794 S.W.2d 479, 483 (Tex.App.—Corpus Christi 1990, writ denied).

■ In the present case, although Kramer admits that he is not a medical doctor, he does have an undergraduate degree from Rutgers University in bacteriology and anthropology, a masters degree in public health from the Johns Hopkins University, and a doctorate from Pacific Western University in public health, as well as postgraduate education at the Columbia University School of Public Health. Through self education and reading the relevant medical literature in epidemiology, Kramer has further developed an expertise concerning the standard of care in the collection of blood. Accordingly, we hold that the summary judgment evidence adequately demonstrated Kramer's qualification to render an opinion concerning the standard of care in the collection of blood, which then raised a fact issue for trial.[5] Appellants' third point of error is sustained.

By their first point of error, the Longorias complain that it was incorrect for the trial court to grant summary judgment on UBS's separate affirmative defense of limitations. The Longorias filed the present lawsuit for wrongful death and survival causes of action against UBS on December 19, 1986, some three months after the Longoria child died on September 30, 1986. Two years had passed since the Longoria child was diagnosed with AIDS during an April 1984 hospitalization, and four years had passed since the July 1982 transfusions.

■ Both wrongful death and survival causes of action are derivative and cannot be maintained when the decedent's own cause of action for injuries would have been barred had she survived those injuries. *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343 (Tex. 1992); *Martinez v. William C. Flores, M.D., P.A.,* 865 S.W.2d 194 (Tex.App.—Corpus Christi 1993, writ denied); *Davenport v. Phillip Morris, Inc.,* 761 S.W.2d 70 (Tex. App.—Houston [14th Dist.] 1988, no writ); Tex.Civ.Prac. & Rem.Code Ann. §§ 71.003, 71.021 (Vernon 1986). Accordingly, when decedent would be barred by limitations from asserting a cause of action at the time of her death, the beneficiaries under the wrongful death and survival statutes likewise are precluded from asserting derivative causes of action. *Russell,* 841 S.W.2d at 345; *Martinez,* 865 S.W.2d at 197; *Davenport,* 761 S.W.2d at 72.

■ Because a blood bank does not provide medical or health care to the blood transfusion recipient, a cause of action against it based on contaminated blood is subject to the normal two-year statute of limitations period set forth in Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986), rather than the more strictly applied limitations period set out in the Texas Medical Liability and Insurance Improvement Act, Tex.Rev. Civ.Stat.Ann. art. 4590i § 10.01 (Vernon Pamph.1995). *J.K. and Susie L. Wadley Research Institute and Blood Bank v. Beeson,* 835 S.W.2d 689, 696 (Tex.App.—Dallas 1992, writ denied); *see also Schaefer v. Gulf Coast Regional Blood Center,* 10 F.3d 327, 331 (5th Cir.1994):

■ However, an injured person younger than 18 years of age is considered to be under a legal disability which tolls the statute of limitations during the potential plaintiff's minority. Tex.Civ.Prac. & Rem.Code Ann. § 16.001 (Vernon Supp.1995); *see Weiner v. Wasson,* 900 S.W.2d 316, 38 Tex.Sup.Ct.J. 750, 754 (1995).

■ In the present case, it is undisputed that the Longoria child died before reaching

5. However, we express no opinion concerning the ultimate admissibility of Kramer's testimony at trial, when the basis for his qualification as an expert may be more fully tested by UBS and subjected to closer scrutiny by the trial court.

18 years of age and that her own potential cause of action against the blood bank for the personal injury was tolled up until the time of her death. Accordingly, she maintained a viable cause of action until the time of her death, and her parents timely asserted derivative survival and wrongful death causes of action well within two years after her death. Appellants' first point of error is sustained.

We REVERSE the trial court's summary judgment and REMAND the case for trial on the merits.