Affirmed and Memorandum Opinion filed November 25, 2008








Affirmed and Memorandum Opinion filed November 25, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO.  14-07-00083-CV

____________

 

JIMMY J.  KELLY, Appellant

 

V.

 

AMERICAN INTERSTATE INSURANCE CO.,
HAMMERMAN & GAINER, INC., AND SHERYL BUTMAN, Appellees

 



 

On Appeal from the 334th
District Court

Harris County, Texas

Trial Court Cause No.  2006-08177

 



 

M E M O R A N D U M   O P I N I O N








Jimmy J.  Kelly appeals separate trial court orders
transferring venue; sustaining  appellees American Interstate Insurance, Inc.
and Sheryl Butman=s plea to the jurisdiction; and granting a
motion to dismiss for lack of jurisdiction by appellee Hammerman & Gainer,
Inc.  (AH&G@).  On appeal,
Kelly argues that the order to transfer venue was in error because he was not
given proper notice of the venue hearing as required by the Texas Rules of
Civil Procedure.  Further, Kelly asserts that the orders regarding jurisdiction
were in error because he was not, as appellees assert, required to exhaust
further administrative remedies.  We affirm. 

BACKGROUND

The facts in this case are generally undisputed.  On May
14, 2002, Kelly was injured during the course and scope of his employment with
Chock=s, Inc., in
Andrews County.  Several weeks later, appellee American Interstate, Chock=s insurer, denied
the compensability of Kelly=s claim.  At that time, American
Interstate advised Kelly of his right to a benefit review conference[1]
if he disagreed with this assessment.  In late July, Kelly and American
InterstateCthrough its third-party administrator, appellee
H&G, and their claims adjuster, appellee ButmanCparticipated in a
benefit review conference, which later resulted in both parties agreeing to a
benefit dispute agreement (ABDA@).  This BDA
stated that Kelly had sustained a Acompensable injury@ to his lower
back. 

In December 2002, however, American Interstate filed
another explanation of benefits, denying Kelly=s claim for
medical expenses and also stating that Kelly had intentionally withheld
information about prior injuries which may have contributed to his condition. 
Further, American Interstate asserted that Kelly=s alleged need for
spinal surgery arose from his prior injuries.  A few days later, a doctor
examined Kelly on American Interstate=s behalf.  Based
on this examination, the doctor reported that a spinal fusionCrequested by KellyCwas not
recommended.








In January 2003, the parties entered into a second BDA in
which American Interstate again agreed that Kelly had suffered a compensable
injury.  Further, American Interstate waived its ability to contest the
compensability of the claim.  In March, 2003, American Interstate granted Kelly
preauthorization for a spinal decompression procedure, but denied
preauthorization for a spinal fusion.  

In September 2003, Kelly underwent surgery, intending to
receive a spinal fusion.  However, during the procedure, his surgeon determined
that a spinal fusion was not necessary.

In December 2004, Kelly filed this suit in Andrews County
alleging statutory and common-law bad faith, among other claims, for damages
caused by appellees= denial of preauthorization for the spinal
fusion.  In January 2005, American Interstate and Butman filed a motion to
transfer venue, alleging proper venue in Harris County.  In February 2005,
H&G also filed a motion to transfer venue, alleging proper venue in Dallas
County.  On August 8, 2005, the Andrews County district court signed an order
setting the hearing on the motions for September 6, 2005C29 days later.  On
August 30, Kelly filed an objection to the court=s September 6 setting,
citing improper notice.  On September 6, the Andrews County district court
conducted the venue hearing over Kelly=s objection.  On
January 1, 2006, the district court signed an order transferring venue of the
case to Harris County.

Appellees American Interstate and Butman filed a plea to
the jurisdiction, alleging that the trial court did not have subject-matter
jurisdiction over the suit because Kelly had failed to exhaust all
administrative remedies before the Texas Workers= Compensation
Commission (ATWCC@).  Later, H&G filed a motion to
dismiss on similar grounds.  In a single order, the trial court sustained the
plea of American Interstate and Butman, and granted the motion by H&G. 
This timely appeal followed.  

 








STANDARDS OF REVIEW

It is an abuse of discretion for the trial court to rule on
a motion to transfer venue without giving the parties notice as required by the
Rules of Civil Procedure.  HCA Health Servs. of Tex., Inc. v. Salinas,
838 S.W.2d 246, 247B48 (Tex. 1992) (per curiam); Henderson
v.  O=Neill, 797 S.W.2d 905, 905 (Tex.  1990)
(per curiam).  A trial court abuses its discretion if it acts in an arbitrary
or unreasonable manner without reference to any guiding rules or principles.  Bowie
Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52
(Tex. 2002) (per curiam). 

A plea to the jurisdiction is a dilatory plea that seeks
dismissal of a case for lack of subject-matter jurisdiction.  Harris County
v.  Sykes, 136 S.W.3d 635, 638 (Tex.  2004).  Whether a court has subject-matter
jurisdiction is a question of law.  Tex. Dept. of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  Accordingly, we review a
challenge to the trial court=s subject-matter jurisdiction de novo.  Id.
at 228.  When reviewing a plea to the jurisdiction, we must look to the
allegations in the pleadings, liberally construe them in the plaintiff=s favor, and look
to the pleader=s intent.  Id.  at 226.  In doing so, we
consider the facts alleged in the petition and, to the extent relevant to the
jurisdictional issue, any evidence the parties submitted to the trial court.  See
Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).  If the
pleadings do not contain sufficient facts to affirmatively demonstrate the
trial court=s jurisdiction but do not affirmatively demonstrate
incurable defects in jurisdiction, the issue is one of pleading sufficiency and
the plaintiffs should be afforded the opportunity to amend.  Miranda,
133 S.W.3d at 226B27.  If the pleadings affirmatively negate
the existence of jurisdiction, then a plea to the jurisdiction may be granted
without allowing the plaintiffs an opportunity to amend.  Id., 133
S.W.3d at 227.

 

 








ANALYSIS

I.                   
Notice of Venue Hearing

In his first issue on appeal, Kelly argues that he was
not given sufficient notice of the hearing on appellees= separate motions to transfer venue.  Kelly
asserts that the trial court=s
order was granted and conveyed to him only 29 days before the scheduled date of
the hearing.  As a result, he contends not only was he denied the required 45
days= notice of the
hearing, but it was impossible for him to timely file a response in opposition
to appellees= motions
at least 30 days before the hearing.  See Tex. R. Civ. P. 87(1).

On appeal, Kelly does not object to the court=s determination that venue
was proper in Harris County; he merely objects to the lack of notice.  For this
reason, it is not necessary for this court to conduct a review of the trial
court=s venue
analysis.

The Texas Rules of Civil Procedure provide that, except
on leave of the court, each party is entitled to at least 45 days notice of a
hearing on a motion to transfer.  Id.  Appellees assert that Kelly was
given more than 45 days notice of the hearing, because he received a copy of
the appellees= joint
motion to set a hearing on all of their venue motions, as well as a proposed
order, on July 14, 2005.  The cover letter accompanying the motion and proposed
order provides as follows:

The Andrews County Court Coordinator has
advised us that the hearing has already been placed on the Court=s September 6, 2005, docket
at 10:00 a.m. and that the Motion and Order are simply a formality.

 

At the venue hearing, Kelly=s
counsel admitted to having received the letter and its contents.  Consequently,
Kelly was aware of appellees=
efforts to schedule the hearing on their joint motion as of July 14Cmore than 50 days before
the scheduled hearing.








To date, there does not appear to be any Texas case
addressing whether receipt of an unsigned scheduling order qualifies as
sufficient notice of a venue hearing.  However, several similar cases provide
sufficient authority for this court to hold that the circumstances in this case
do qualify as proper notice.

In Mansfield State Bank v. Cohn, 573 S.W.2d 181
(Tex. 1978), the Texas Supreme Court held that a letter sent to the district
court clerk, when copied to opposing counsel, was sufficient notice of a trial
setting.  Id.  at 185.  In that case, the court stated, AIt is reasonable to assume
that if a trial setting is requested from the district clerk, a litigant is put
on notice that trial may be on that requested date.@  Id.  In the present case, appellees= letter established that
arrangements with the court coordinator had already been madeCthe date had been set.  The
court=s act of signing
the order was a mere formality.  Other courts have similarly held that the
forwarding of unsigned orders to opposing counsel provides sufficient notice of
summary-judgment hearings under the Rules of Procedure.   See Goode v.  Avis
Rent-A-Car, Inc., 832 S.W.2d 202, 204 (Tex. App.CHouston [1st Dist.] 1992, writ denied)
(receipt of an unsigned order was sufficient notice to respondent of
summary-judgment hearing); Longoria v. United Blood Servs., 907 S.W.2d
605, 609B610 (Tex.
App.CCorpus Christi
1995) rev=d
on other grounds, 938 S.W.2d 29 (Tex.  1997) (citing Mansfield,
573 S.W.2d at 185, and holding that letter requesting specific date for trial
or hearing, when copy sent to opposing parties, is sufficient notice of
setting); West v. Maint. Tool & Supply Co., Inc., 89 S.W.3d 96, 102B03 (Tex. App.CCorpus Christi 2002, no
pet.) (agreeing with Goode and Longoria, and citing Mansfield,
573 S.W.2d at 185).  Here, appellees=
letter, accompanied by a copy of their joint motion and the unsigned order,
provided Kelly with actual notice of the hearing date, sufficient to satisfy
Rule 87.  As a result, the trial court did not abuse its discretion in overruling
Kelly=s objection to
the venue hearing.  See Bowie Mem=l
Hosp., 79 S.W.3d at 52. 

We overrule Kelly=s
first issue. 

II.                
Exhaustion of Administrative Remedies








In his second issue, Kelly argues that the trial court
erred in granting appellees=
motions asserting lack of subject-matter jurisdiction.  Kelly argues that
because appellees signed three separate BDA=sCeach stipulating that Kelly=s injury was compensableCthey effectively waived
further administrative proceedings. 

By contrast, appellees assert that the relevant
agreements stating that Kelly=s
injuries were compensable did not automatically entitle him to medical
benefits.  Further, because an independent examination by a second doctor found
that the requested spinal fusion was unnecessary, they were within their rights
to deny preauthorization for the procedure.  Finally, appellees argue that
Kelly=s proper remedy
would have been to appeal this dispute to the TWCCCsomething that Kelly never attempted.

A[T]he
Workers= Compensation
Act vests the power to award compensation benefits solely in the Workers= Compensation Commission,
subject to judicial review.@ 
Am. Motorists Ins. Co. v. Fodge, 63 S.W.3d 801, 803 (Tex. 2001) (quoting
Saenz v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607, 612
(Tex.1996)).  The TWCC has jurisdiction over disputes involving
preauthorization of medical care and reimbursement of medical expenses.  Id. 
A claimant is required to exhaust all administrative remedies with the TWCC
before suing an insurer on statutory and tort claims alleging denials, delays,
interruptions, and premature terminations of medical treatment.  Pickett v. Tex. Mut. Ins. Co., 239 S.W.3d 826, 832 (Tex. App.CAustin, 2007, no pet.); see also
Fodge, 63 S.W.3d at 804.  The determination of whether any type of claim is
within the TWCC=s exclusive jurisdiction depends on whether
the claim is based on a claimant=s entitlement to
benefits.  Fodge, 63 S.W.3d at 804;  Pickett,
239 S.W.3d at 835B36.








The Texas Workers= Compensation Act
(Athe Act@) provides a four‑tier
system for the disposition of claims by the TWCC.  See In re Tex. Workers= Comp. Ins. Fund, 995 S.W.2d 335,
336 (Tex. App.CHouston [1st Dist.] 1999, no pet.).  In the first
tier, the parties participate in a Abenefit review conference@ conducted by a Abenefit review
officer.@ Tex. Lab. Code
Ann. '' 410.021B.034 (Vernon 2006
& Supp. 2008).  The conference, which is a Anonadversarial,
informal dispute resolution proceeding,@ is designed to Amediate and
resolve disputed issues by agreement of the parties.@  Id. ' 410.021(3).  In
the second tier, A[i]f issues remain unresolved after a
benefit review conference, the parties, by agreement, may elect to engage in
arbitration,@ and, absent an agreement, a party is entitled to seek
relief at a contested case hearing.  Id. '' 410.104, 410.151B.169 (Vernon
2006).  In the third tier, a party may seek review by an administrative appeals
panel.  Id. '' 410.201B.209 (Vernon
2006).  Finally, in the fourth tier, an aggrieved party may seek judicial
review.  Id. '' 410.251B.308 (Vernon
2006).

The statutory scheme specifically provides that Athe division shall
schedule a contested case hearing...if the disputed issues are not resolved at
the benefit review conference.@ Id. ' 410.025. 
Furthermore, A[a] dispute may be resolved in whole or in part at a
benefit review conference,@ and, following the conclusion of the
benefit review conference, the benefit review officer shall reduce the
agreement to writing to be signed by the officer and each party.  Id. ' 410.029(a), (b). 
This agreement Ais binding on the insurance carrier
through the conclusion of all matters relating to the claim, unless the division
or a court, on a finding of fraud, newly discovered evidence, or other good and
sufficient cause, relieves the insurance carrier of the effect of the
agreement.@  Id. ' 410.030(a).  AIf a dispute is
not entirely resolved...the benefit review officer shall prepare a written
report that details each issue that is not resolved at the conference.@  Id. ' 410.031(a).

Under the plain language of the Act, the TWCC, the
claimant, and the insurance provider can enter into a binding written agreement
that resolves all disputed issues.  The Act does not require a claimant who has
entered into a binding written agreement to settle his benefits dispute to
continue through all four tiers of the disposition process. See Fund,
995 S.W.2d at 337.








Each of the three BDAs in this case described Kelly as
having suffered a Acompensable injury.@  Under the Act, a
Acompensable injury@ is an injury that
arises out of and in the course and scope of employment for which compensation
is payable under the Act.  Tex.  Lab.  Code Ann.  _ 401.011(10)
(Vernon Supp. 2008).  ACompensation@ is the payment of
a benefit.  Id.  at _ 401.011(11).  A Abenefit@ under the Act can
be a medical benefit, an income benefit, a death benefit, or a burial benefit
based on a compensable injury.  Id.  at _ 401.011(5).  A Amedical benefit@ is payment for
health care reasonably required by the nature of a compensable injury and
intended to:

(A) cure or relieve the effects naturally resulting from the
compensable injury, including reasonable expenses incurred by the employee for
necessary treatment to cure and relieve the employee from the effects of an
occupational disease before and after the employee knew or should have known
the nature of the disability and its relationship to the employment;

(B) promote recovery; or

(C) enhance the ability of the employee to return to or retain employment.

 

Id. 
at
_ 401.011(31).  

According to the record, the only disputed issues the
parties= first BDA
addressed were whether Kelly had suffered a compensable injury and, if so,
whether Kelly had suffered a disability as a result.  The parties answered both
questions affirmatively in the first BDA; however, they mentioned no specific
medical or surgical procedures.  Further, they expressly stated in the first
BDA that the duration of Kelly=s disability for the purposes of paying
benefits was not entirely settled, leaving the matter to be considered at a
later date.








The second BDA, coming after American Interstate had raised
concerns about whether or not Kelly=s injuries had
resulted from pre-existing health conditions, addressed four issues: (1)
whether good cause existed to relieve the carrier from the effects of the first
BDA; (2) whether Kelly had sustained a compensable injury; (3) whether Kelly
had been disabled by the injury, and for what period; and (4) whether the
carrier had waived its right to contest the compensability of Kelly=s claim.  The
second BDA stated that the first BDA remained effective, that Kelly=s injury was
compensable, and had resulted in a disability from the date of injury to the
present.  It also stated that American Interstate had, in fact, waived its
right to contest the compensability of Kelly=s claim.  Again,
however, it discussed no specific medical treatments or procedures.

Finally, the third BDA, entered into after Kelly was later
injured in an unrelated automobile accident, sought to clarify and restrict the
scope of Kelly=s compensable injury to the cervical area of his spineCthe location of
his work-related injury.  Again, it mentioned no medical treatments or
procedures. 

On appeal, Kelly argues that because a BDA functions as a
contract between the claimant and the carrier, appellees waived any ability to
deny preauthorization of spinal surgery when it agreed to the compensability of
his injury on three separate occasions.  In response, appellees argue that, as
described above, compensability merely makes a claimant eligible for many
different types of benefits, possibly including medical procedures.  Consequently,
the central question in this case is whether a claimant can sue a carrier for
the denial of specific benefits, based on an agreement to provide general
benefits, without first exhausting administrative remedies through the TWCC
process.








The Texas Supreme Court addressed part of this question in American
Motorists Insurance Co. v. Fodge, 63 S.W.3d 801 (Tex.  2001).  In Fodge,
a claimant sought benefits from her employer=s insurance carrier
after suffering a workplace injury.  The carrier denied that her injuries were
work-related.  After a contested case hearing, the carrier was ordered to pay
temporary income benefits for a specified period.  Never in those proceedings
did the claimant seek medical benefits or complain that the carrier had denied
benefits.  Later, the claimant sued the carrier for denying the income benefits
as well as denying payment for certain medical treatments.  The trial court
dismissed the claims for lack of jurisdiction as Fodge had not yet exhausted
her remedies with the TWCC.  On appeal, Fodge argued that because she was suing
for damages resulting from the denial or delay of benefit paymentsCrather than
payment of the benefits themselvesCher claims were
properly before the trial court, as opposed to the TWCC.  The Texas Supreme
Court disagreed, saying that because her suit involved her entitlement to
workers= compensation
benefits, her claims were within the exclusive jurisdiction of the TWCC.  Id.
 Further, the court held that a trial court could have jurisdiction only
over final orders of the TWCC, meaning that a court could not hear claims related
to benefits which the TWCC had never ordered.  Id.  at 803B804.  Because the
TWCC had never awarded medical benefits to Fodge, she could not sue for a delay
or denial in paying them.  Id.  at 804.  

Only a handful of Texas cases since Fodge have
considered subject-matter jurisdiction when a BDA is involved, and only four
appear relevant to this circumstance.  Kelly relies upon In re Texas Workers= Compensation
Insurance Fund, 995 S.W.2d 335 (Tex. App.CHouston [1st
Dist.] 1999, no pet.), which involved a similar bad-faith action by a claimant
against an insurance carrier.  In Fund, the claimant and carrier entered
into a BDA stating that the claimant=s health problems
were causally related to his workplace injury, and that the carrier would pay
reasonable and necessary medical expenses according to the Act.  Despite this
agreement, the carrier began denying payments to the claimant.  The parties
entered into another BDA wherein the carrier agreed to pay supplemental income
benefits for a specified period.  A third BDA provided supplemental income
benefits for an additional period.  The carrier failed to pay these benefits
and the claimant filed suit without first seeking relief through the TWCC.  In
a mandamus review of the trial court=s refusal to abate
or dismiss the case, the First Court of Appeals held that the Act gives such
agreements between claimants and carriers the same Abinding@ effect upon the
parties as final decisions by the TWCC.  Id. at 337; see also Tex. 
Labor Code Ann. _ 410.030(a).  Further, in denying the petition for
writ of mandamus, the First Court stated:

There is a strong policy behind our holding. When the parties agree
that a claimant=s injuries are compensable, and
such agreement is reduced to writing at a benefit review conference, the
parties to that agreement ought to be held to comply with it. In the absence of
such a policy, there is no incentive or reason for parties to seek resolution
of their dispute at the benefit review conference.

Id.









In Texas Mutual Insurance Co. v. Ruttiger, 265
S.W.3d 651 (Tex. App.CHouston [1st Dist.] 2008, pet. filed), a
claimant similarly filed a bad-faith action against his employer=s insurance
carrier.  The claimant alleged that the carrier had denied timely payment of
income benefits and necessary medical treatment without a reasonable basis
until later agreeing to do so in a BDA.  Appealing the jury=s adverse verdict,
the carrier argued that its approval of the BDA was merely a Acompromise@ and not a
determination of benefit entitlement by the TWCC.  Consequently, the carrier
argued, it could not be held liable for failure to pay benefits discussed in
the BDA.  The First Court of Appeals disagreed, echoing its holding in Fund
that Athe Act does not
require a claimant, who has entered into a binding written agreement to settle
his benefits dispute, to continue through all four tiers of the disposition
process.@  Id. at
651 (citing Fund, 995 S.W.2d at 336B37).  Once again,
the First Court held that a binding BDA constituted a Afinal
determination of benefits@ due to a claimant, consequently bestowing
subject-matter jurisdiction to a trial court in an action based on denied or
delayed payment of those benefits.  See id.








In Pickett v. Texas Mutual Insurance Co., 239 S.W.3d
826 (Tex.  App.CAustin 2007, no pet.), another set of
claimants had their bad faith suit against their employers= carrier thrown
out by the trial court for lack of jurisdiction.  The carrier had paid the
claimant income and disability benefits, but had denied preauthorization for
certain pain-management treatments on the basis that the symptoms were
unrelated to the workplace injury.  The claimant never submitted to the TWCC
any disputes concerning denied preauthorization requests.  Ultimately, the
claimant and carrier entered into a BDA for the purpose of determining which of
her symptoms were related specifically to the workplace injury.  The BDA did
not address or determine what medical treatments were related to her
compensable injuries, or what treatments were medically reasonable or necessary
for those injuries.  Later, the claimant sued the carrier for wrongfully
delaying or denying preauthorization of the claimant=s pain
treatments.  On appeal from the trial court=s dismissal, the
Austin Court of Appeals applied the Fodge holding in determining that,
because the claimant=s alleged damages concerned the delay or
denial of benefits, exhaustion of the TWCC process was required.  Id. at
836.  The court went on to say that because the relevant BDA did not determine
which medical treatments were appropriate for the claimant=s disordersCor address the
claimant=s entitlement to
medical benefits in any wayCthe agreement could not be read to create
an entitlement to such benefits.  Id.  at 837.  Rather, the BDA merely
clarified which of the claimant=s injuries were compensable by the
carrier.  Id.  Consequently, the BDA was not a final order creating an
entitlement to benefits sufficient to create subject-matter jurisdiction for a
trial court without further proceedings by the TWCC.  Id.      

We believe that the case at bar is more similar in
circumstance and application to Fodge and Pickett than to Fund
and Ruttinger.  As the Fodge court stated, the importance of
requiring a claimant to exhaust his administrative remedies before granting
subject-matter jurisdiction to a trial court is based on the fact that Aonly the [TWCC]
can determine a claimant=s entitlement to compensation benefits.@ Fodge, 63
S.W.3d at 804.  A[J]ust as a court cannot award
compensation benefits, except on appeal from a [TWCC] ruling, neither can it
award damages for a denial in payment of compensation benefits without a
determination by the [TWCC] that such benefits were due.@  Id.  In
both Fodge and Pickett, claimants were denied jurisdiction in the
trial court to pursue damages based on the denial or delay of benefits to which
the TWCC had established no clear entitlement.  See  id.; see also
Pickett, 239 S.W.3d at 837B838 (claimant was required to exhaust
administrative remediesCdespite agreement with insurerCwhen agreement did
not resolve any issues concerning claimant=s entitlement to
medical benefits).  








Kelly argues on appeal that his BDA relieves him of the
necesity of the TWCC process for two reasons.  First, he points to the  Fund
holding that a BDA constitutes a final order by the TWCC, when resulting
from the statutory dispute resolution process and signed by both parties.  See
Fund, 995 S.W.2d at 337.  However, in both Fund and Ruttinger,
the relevant BDAs expressly created an entitlement to medical benefits or
treatment.  See id. at 336 (agreement stated: A[t]he carrier
shall pay reasonable and necessary medical per the act@); Ruttinger,
265 S.W.3d at 656 (agreement stated that Athe insurer would
pay >reasonable and
necessary medical=@).  In the present
case, there was no express entitlement to such benefits.  In fact, as the
record indicates, medical benefits or specific treatments were never a
consideration in any of the three BDAs signed by the parties.    

Kelly=s appeal also relies on the statutory
language stating that Aan agreement...is binding on the insurance
carrier through the conclusion of all matters relating to the claim.@  Tex.  Lab.  Code
Ann.  _ 410.030(a). 
However, appellees have never challenged the enforceability of Kelly=s BDA; rather,
they challenge its content and meaning.  Much like the case in Pickett,
Kelly=s BDAs merely
specified the nature of his injuries and determined that they were generally
compensable.  As previously stated, the benefits afforded to compensable
injuries come in many forms.  See id. _ 401.011(5), (10),
(11).  Absent a specific order or agreement related to medical benefits,
appellees retained the authority and responsibility to approve or deny requests
for preauthorization for medical treatments Abased solely upon
the reasonable and necessary medical health care required to treat [his]
compensable injury.@ See Pickett, 239 S.W.3d at 837B38; see also Tex. 
Admin.  Code Ann. _ 134.600 (Vernon 2002).

Even if we were to read the BDAs as conferring specific
medical benefits, the Act provides that an entitlement to medical benefits is
limited to Aall health care reasonably required by the
nature of the injury as and when needed.@  Tex.  Labor Code
Ann.  _ 408.021(a)
(Vernon 2006) (emphasis added).  Further, the Act provides a narrow exception
allowing an insurance carrier to require preauthorization when spinal surgery
is involved.  See id.  __ 408.026, 413.014(c)(1) (Vernon 2006). 
Consequently, even if appellees had expressly agreed to provide Kelly with
medical benefits, they would still retain the right to require preauthorization
of the spinal fusion under the Act.    








Because Kelly, like the Pickett claimant, did not
submit any denied preauthorization requests to the TWCC, he has failed to
exhaust his administrative remedies under the Act.  Consequently,  the trial
court had no subject-matter jurisdiction over this action.  The trial court
properly granted appellees= motions.  Kelly=s second issue is
overruled.       

 

 

CONCLUSION

Having overruled both of Kelly=s issues on
appeal, we affirm the judgment of the trial court.

 

 

 

/s/      Jeff Brown

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed November 25, 2008.

Panel consists of
Justices Yates, Guzman, and Brown.









[1]  A benefit review conference is Aa nonadversarial, informal dispute resolution
proceeding@ designed to: 

(1) explain, orally and in writing, the rights of the
respective parties to a workers= compensation
claim and the procedures necessary to protect those rights;

(2) discuss the facts of the claim, review available
information in order to evaluate the claim, and delineate the disputed issues;
and

(3) mediate and resolve disputed issues by agreement
of the parties in accordance with this subtitle and the policies of the
division.

Tex. 
Lab.  Code Ann.  _ 410.021 (Vernon 2006).