In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00237-CV
_____

JACQUELINE RENEE VARADY, Appellant

V.

CHRISTINA LEE GYORFI AND JAMES STEVEN GYORFI, Appellees

_____

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 14-02-01328 CV
_____

MEMORANDUM OPINION

Jacqueline Renee Varady (Varady) sued her sister, Christina Lee Gyorfi (Christina), and Christina's husband, James Steven Gyorfi (James) (hereinafter collectively Defendants), alleging that the Defendants adopted Varady's biological child and improperly used money Varady set aside for the Defendants to use for the care and support of Varady's biological child. The Defendants filed a no-evidence motion for summary judgment and Varady failed to file a timely response. The trial court granted summary judgment in favor of the Defendants.

1

Varady appeals the trial court's order denying Varady's Motion for New Trial and denying her leave to file a late response to the motion for summary judgment. We affirm.

BACKGROUND FACTS

On February 5, 2014, Varady filed Plaintiff's Original Petition alleging that the Defendants adopted Varady's biological daughter in 2012. According to Varady's Original Petition, Varady claims that she was "led to believe that her money was needed in order to support, maintain, and care for" the child and that Varady "entrusted" her money to the Defendants for that "limited purpose." Varady alleged that the Defendants withdrew $117,000 from a bank account that was jointly owned by Varady and Christina, and that the Defendants did not use the money to support, maintain, and care for Varady's biological child. Varady's Original Petition included claims for breach of fiduciary duty, common law fraud, money had and received, negligent misrepresentation, and breach of contract.

The Defendants filed an answer, jury demand, requests for disclosure, and a counterclaim. Varady filed an answer to the counterclaim. The Defendants then filed an amended answer and special exceptions to Varady's petition, and they also filed an amended counterclaim. On February 25, 2015, the defendants filed a no-evidence motion for summary judgment. That same day, the Defendants filed a

notice of submission notifying the parties that the matter was set for submission hearing on March 18, 2015.

On March 5, 2015, the trial court signed an order granting some of the Defendants' special exceptions and requiring Varady to replead to cure the defects. Varady filed her First Amended Petition on March 17, 2015, and then she filed her Second Amended Petition on March 18, 2015. She asserted the same causes of action in both amended petitions as in her Original Petition.

Varady did not file a response to the no-evidence motion for summary judgment, and on March 24, 2015, the trial court signed an order granting the no-evidence motion for summary judgment. On March 26, 2015, the Defendants filed a notice of non-suit of their counterclaim.

On April 16, 2015, Varady filed a Motion for New Trial and for Leave to File Summary Judgment Response Out of Time (hereinafter Motion for New Trial).[1] In the Motion for New Trial, Varady stated that "[a]pplying the *Craddock* [*v. Sunshine Bus Lines*, 133 S.W.2d 124 (Tex. 1939),] standards to this case, Plaintiff can show that she meets those standards, and this Court should grant a

---

[1] The next day Varady also filed an Amended Motion for New Trial, wherein she asserted the identical arguments and included the same attachments as in her original Motion for New Trial. Accordingly, unless specifically stated, we reference the arguments and evidence from the Motion for New Trial and the Amended Motion for New Trial collectively as "Motion for New Trial."

new trial, if a new trial is necessary[.]" In regards to the first *Craddock* factor, Varady's counsel stated in the motion that he also represented Varady's parents in a suit in Family Court involving Christina and James Gyorfi. According to Varady's counsel, his failure to file a response to the motion for summary judgment was not intentional or the result of conscious indifference because "it is easy to see how the attorney juggling both sets of plates at the same time can make an honest mistake as to the deadlines he actually knows about." In an affidavit that is attached as an exhibit to the Motion for New trial, Varady's counsel swears to the following:

> "I am an attorney representing Plaintiff Jacqueline Renee Varady in this lawsuit, which arose from Defendants' adoption of Plaintiff's biological child. I also represent Plaintiff's parents in a related family law case, currently ongoing in the 410th District Court, against these same Defendants. On February 25, 2015, I apparently received notice that Defendants had e-filed a motion for summary judgment in this case. I recall being aware of a rejected filing of this MSJ at some point.

> "After the notice that this e-filing had been rejected, it appears that I received an e-mail from [] opposing counsel in this case[] that attached a motion for summary judgment, exhibits, and a notice of submission for March 18, 2015. I did not think that a response was necessary and I did not calendar a date to file a timely response to the summary judgment motion. I did not realize at that time, or at any time prior to the court's order granting summary judgment, that the summary judgment motion had been successfully filed in this case and that I needed to file a response.

"Another attorney [] is assisting me with this case. He we [sic] not notified by myself, the court, or even opposing counsel (who had rightly seen fit to "cc" him on other matters, but, for whatever reason, had failed to "cc" him on this one) of the motion for summary judgment. As a result, any lack of response to such a motion on [his] part was, like my response (or lack thereof,) not due to conscious indifference but instead due to accident or mistake.

"Subsequent to the filing of the summary judgment motion, several e-mails were exchanged between myself and opposing counsel in this case as well as the attorney representing Defendants in the family law case. In the course of these e-mails, all attorneys were attempting to schedule the Defendants' depositions for dates in March, including the date that the summary judgment motion was set for submission. Defendants' attorneys, like [the assisting attorney] and I, had to clarify which deposition dates pertained to which of Defendants' cases—two different cases in two different courts in which I am actively representing two different sets of clients. The similar facts and parties and circumstances in these cases also contributed to my mistake.

. . . ."

In her Motion for New Trial, Varady alleged that she produced "some evidence" to support her claims against the Defendants and that she satisfied *Craddock*. More specifically, Varady argued in her Motion for New Trial that the bank records she produced during discovery and attached to her Motion for New Trial depict a wire transfer from her to the Defendants and expenditures by the Defendants that were not reasonably related to the child's care. According to Varady, "[a]t the very least, these deposits and expenditures meet the minimum burden of evidentiary proof necessary to grant a new trial." Varady argued that

5

because the Defendants cannot explain how the withdrawals and payments from the joint account benefit the child, the bank records constitute "some evidence to support Plaintiff's claims[.]" However, Varady failed to explain how the account information established the necessary elements of any of her claims. Varady alleged in her Motion for New Trial that the granting of a new trial will not cause undue delay or injury to the Defendants. And, Varady alleged that she was ready to go to trial and was willing to reimburse Defendants for their attorney's fees incurred "in presenting their motion[.]"

On May 1, 2015, the Defendants filed their Response to Plaintiff's Motion for New Trial with exhibits attached thereto. In Defendants' Response to the Motion for New Trial, the Defendants argued that Varady was properly "e-served" with the no-evidence summary judgment and notice of hearing. According to the Defendants, because Varady did not file a response within seven days before the submission date of the summary judgment motion, the Defendants were entitled to summary judgment as a matter of law under Rule 166a(i) of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 166a(i). The Defendants attached several exhibits to their Response to the Motion for New Trial including Exhibit A which contained the following: an email from defense counsel to Varady's attorney who the Defendants allege is "the only counsel of record for Plaintiff[,]" and who is the

6

same counsel who filed the Motion for New Trial on behalf of Varady; and a copy of an email dated February 25, 2015, time stamped at 2:32 p.m., which reads as follows: "I have attached our Motion for Summary Judgment, Exhibits A-E, Notice of Submission and Order which were filed with the court today." The email referenced several attachments, including "Gyorfi MSJ.doc[,]" "Gyorfi notice of submission.rtf[,]" and "Gyorfi Order Granting MSJ.rtf[.]" The attachments included an email response the same day at 2:48 p.m. from plaintiff's counsel stating, "Got it." Exhibit B attached to Defendants' Response to the Motion for New Trial included an e-filing receipt dated February 25, 2015, and time stamped 2:19 p.m. advising the parties that (1) exhibits to the summary judgment motion had been rejected and that the summary judgment exhibits needed to be refiled together with the motion, (2) that the notice of submission and the proposed order on the summary judgment motion had been accepted, and (3) that service had been made on plaintiff's counsel at 2:20 p.m. that same day. Exhibit C appears to be a copy of an email from defense counsel to Varady's counsel dated February 25, 2015, at 7:01 p.m., and therein it explained that the motion for summary judgment was re-filed as a single document, per the clerk's request, and stating that the re-filed motion and exhibits were attached to the email. Exhibit D is another e-filing receipt that shows that the motion for summary judgment and exhibits were re-

filed on February 25, 2015, at 6:56 p.m. (and accepted for filing on February 26, 2015, at 9:11 a.m.), and that Varady's counsel was e-served with the re-filed motion for summary judgment and exhibits. Exhibits E, F, and G include the accepted Notice of Submission, setting the submission of the no-evidence motion for summary judgment for March 18, 2015, the accepted proposed order granting the motion, and the first page of the accepted no-evidence motion for summary judgment. Exhibits H through O include copies of documents in support of the Defendants' argument that Varady repeatedly failed to timely respond to discovery deadlines and orders. Exhibit P is a register of filings in the case from the clerk's website, and Exhibit Q is an affidavit from defense counsel stating that the exhibits are true and correct copies.

Defendants argued that Varady's counsel's "failure to understand" that a response was necessary to defeat a no-evidence summary judgment motion did not constitute an accident or mistake, that Varady's counsel's assertion that his failure to respond was the result of an accident or mistake was conclusory and cannot support a motion for new trial, and that Varady's counsel's pattern of ignoring deadlines constituted conscious indifference. Defendants also argued that Varady "failed to set up a meritorious defense via adequate summary judgment proof[,]" and they objected to her late-filed response, objected to exhibits attached to her

Motion for New Trial, and asserted that she failed to present evidence on any of her claims. Specifically, Defendants objected to copies of bank statements Varady had filed with her Motion for New Trial, and Defendants asserted the statements were "not sworn to, proved up, authenticated, properly predicated or otherwise admissible."

On May 11, 2015, the trial court signed an order denying Varady's Motion for New Trial and denying Varady leave to file a summary judgment response late. Varady appealed.

ISSUE ON APPEAL

In her sole issue on appeal, Varady argues that the trial court abused its discretion in denying her Motion for New Trial and Request for Leave to File a Summary Judgment Response Late, and that she has met all three elements of the *Craddock* test.

STANDARD OF REVIEW

We review a trial court's disposition of a motion for new trial for an abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). A trial court has broad discretion in ruling on a motion for new trial. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 210 (Tex. 2009); *Cliff v. Huggins*, 724 S.W.2d 778, 778-79 (Tex. 1987). A trial court abuses its discretion if it acts in an

9

unreasonable or arbitrary manner or without reference to any guiding rules and legal principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). Because the record contains no findings of fact or conclusions of law, we must affirm the trial court's judgment if it can be upheld on any legal theory that finds support in the evidence. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984).

Under *Craddock*, a default judgment should be set aside when the defendant establishes that (1) the failure to answer was not intentional or the result of conscious indifference, but the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no undue delay or otherwise injure the plaintiff. 133 S.W.2d at 126. When a defaulting party moving for a new trial meets all three elements of the *Craddock* test, then a trial court abuses its discretion if it fails to grant a new trial. *Dolgencorp*, 288 S.W.3d at 926. The Texas Supreme Court has held *Craddock* applies to no answer and post-answer default judgments. *Ivy v. Carrell*, 407 S.W.2d 212, 213 (Tex. 1966).

In *Carpenter v. Cimarron Hydrocarbons Corp.*, the Texas Supreme Court considered whether *Craddock* applied where a party failed to timely respond to a motion for summary judgment. 98 S.W.3d 682 (Tex. 2002). In *Carpenter*, after Cimarron filed suit against Carpenter, Cimarron's attorney of record withdrew.

Ten days later Carpenter filed a motion for summary judgment, and a hearing was set on the motion for summary judgment. *Id*. at 684. Thereafter, Cimarron hired a new attorney who contacted Carpenter's counsel and obtained an agreement to reset the hearing on the motion for summary judgment. *Id*. The new attorney then assigned the motion for summary judgment to an associate to prepare a response. *Id*. On April 28th, the new attorney received notice that the hearing on the motion for summary judgment had been reset, making Cimarron's response to the motion for summary judgment due on May 28th. *Id*. The new attorney testified at the hearing on the motion for new trial that he put the notice of hearing in his outbox but failed to have his assistant calendar the date for the associate. *Id*. The attorney mistakenly assumed that his associate was aware of the new hearing date and would prepare a response. *Id*. Two days *before* the hearing on the motion for summary judgment the attorney was reminded about the hearing and he asked his associate for a copy of the response. *Id*. At that time, he learned that a response to the motion for summary judgment had never been filed. *Id*. The day of the hearing on the motion for summary judgment, Cimarron filed a motion for leave to file a late response and alternatively asked the trial court for a continuance of the hearing on the motion for summary judgment. *Id*. at 685. In the motion for leave, Cimarron

11

gave "no reason for Cimarron's failure to file a timely response." *Id*. at 688 (J. Hecht, concurring).

At the hearing on the motion for summary judgment the Cimarron attorney told the court he "had mis-calendared" the setting. *Id*. The trial court denied the motion for continuance and the motion for leave to file a late response to the summary judgment, and granted the summary judgment. *Id*. at 683. Cimarron filed a motion for new trial, which was set for an evidentiary hearing, after which the trial court also denied the motion for new trial. *Id*. at 683, 685. On appeal, the court of appeals reversed the trial court, concluding that *Craddock* applied and that the plaintiff had met the *Craddock* standard. *Id*. at 683. The Supreme Court expressly disapproved of the intermediate level appellate decisions that applied *Craddock* when the nonmovant is aware of its mistake at or before the hearing on the motion for summary judgment and has an opportunity to apply for relief under the rules. *Id*. at 686.

According to the Supreme Court, we review a trial court's ruling on a motion for leave to file a late summary judgment response for an abuse of discretion. *Id*. The Supreme Court held that a motion for leave to file a late summary-judgment response should be granted when the party who files the motion for leave establishes "good cause" by showing that the failure to timely

respond (1) was not intentional or the result of conscious indifference, but the result of accident or mistake, and (2) allowing a late response will not cause any undue delay or otherwise injure the other party. *Id*. at 688. Applying the articulated standard, the Supreme Court concluded that the trial court did not abuse its discretion in denying the motion for leave to file a late response. *Id*. The Texas Supreme Court expressly did not decide whether *Craddock* should apply in cases where the defendant fails to respond to a motion for summary judgment and does not discover his mistake until after the summary judgment hearing or after rendition of judgment. *Id*. at 686.

In *Wheeler v. Green*, 157 S.W.3d 439 (Tex. 2005), the Texas Supreme Court again discussed whether *Craddock* applied in the context of a summary judgment. *Wheeler* involved a dispute regarding the modification of a custody order. *Id*. at 441. Green, the father of the child, filed a petition to modify the parent-child relationship. *Id.* Green served Wheeler, the mother of the child, with sixty-four requests for admissions. *Id*. Wheeler, acting *pro se*, sent her responses to the requests twenty-seven days after she received the requests, but thirty-five days after the "mailbox rule" deemed the requests served. *Id.* Green's attorney then filed a motion for summary judgment based upon the deemed admissions. *Id.* Wheeler filed no response to the motion for summary judgment but she attended the

hearing. *Id.* The trial court granted the motion for summary judgment, and thereafter Wheeler hired an attorney who then filed a motion for new trial, wherein Wheeler argued that the summary judgment should be set aside. *Id.* at 441-42. The trial court denied the motion for new trial. *Id.* at 442. On appeal, the court of appeals affirmed. *Id.* The Supreme Court reversed and remanded the matter to the trial court. *Id.* at 444. According to the Supreme Court, nothing in the record suggested that Wheeler, a *pro se* party, realized her responses to the requests for admissions were late, or that she needed to move to withdraw the deemed admissions, or that she needed to file a response to the motion for summary judgment. *Id.* at 442, 444.

Utilizing the *Carpenter* standard, the Court examined the record to determine if Wheeler established "good cause" and no undue prejudice. *Id.* The Court stated: "[o]n this record, the lower courts could have concluded that [the pro se plaintiff] was wrong on her dates and wrong on how to correct them, but not that either was the result of intent or conscious indifference." *Id.* But, the Court noted that the same might not have been the case if the same mistakes had been made by a lawyer. *Id.* at 442 n.1. The Court discussed the fact that the responses to the requests for admissions were received by Green's attorney and that the nature of

14

the requests were not evidentiary but were more akin to a demand upon Wheeler to admit she had no cause of action or ground for defense. *Id.* at 443.

The Court concluded that the trial court should have granted the motion for new trial and allowed the deemed admissions to be withdrawn. *Id.* at 444.

Since *Carpenter*, several intermediate appellate courts have discussed whether *Craddock,* a modified *Craddock* standard, or *Carpenter* applies when reviewing a request for a new trial after entry of a default summary judgment. *See, e.g.*, *Weech v. Baptist Health Sys.*, 392 S.W.3d 821, 825-26 (Tex. App.—San Antonio 2012, no pet.); *Imkie v. Methodist Hosp.*, 326 S.W.3d 339, 345-47 (Tex. App—Houston [1st Dist.] 2010, no pet.); *Urbanczyk v. Urbanczyk*, 278 S.W.3d 829, 835-36 (Tex. App.—Amarillo 2009, no pet.); *Limestone Constr. v. Summit Commercial Indus. Props.*, 143 S.W.3d 538, 542-44 (Tex. App.—Austin 2004, no pet.); *West v. Maint. Tool & Supply Co.*, 89 S.W.3d 96, 100-02 (Tex. App.—Corpus Christi 2002, no pet.). The modified *Craddock* standard provides that a default summary judgment should be set aside if (1) the failure to answer was not intentional or the result of conscious indifference but instead was the result of an accident or mistake, and the nonmovant's motion for new trial (2) alleges facts and contains evidence sufficient to raise a material question of fact (as opposed to setting up a meritorious defense, as *Craddock* requires) and (3) demonstrates that

15

granting the motion will cause no undue delay or other injury to the movant. *See Weech*, 392 S.W.3d at 825-26.

Under *Craddock* or a modified *Craddock* standard, the first prong of each standard is the same: the defaulting party must establish that its failure to respond was not intentional or the result of conscious indifference but instead was the result of a mistake or accident. *Fernandez v. Peters*, No. 03-09-00687-CV, 2010 Tex. App. LEXIS 8473, at \*\*22-27 (Tex. App.—Austin Oct. 19, 2010, no pet.) (mem. op.) (the trial court could reasonably have concluded that the failure to respond was the result of conscious indifference and the court of appeals need not determine which standard should apply); *see also Craddock*, 133 S.W.2d at 126; *Limestone Constr.*, 143 S.W.3d at 542. Similarly, under *Carpenter*, the appellate court examines the trial court's refusal to grant a motion for leave to file a late response to a motion for summary judgment to determine whether the trial court abused its discretion in denying the motion for leave to file a late response, examining whether the party who filed the motion for leave established "good cause" by showing that the failure to timely respond was not intentional or the result of conscious indifference, but the result of accident or mistake. *Carpenter*, 98 S.W.3d at 688.

Accordingly, Varady's burden under the first element of *Craddock*, a modified *Craddock*, and *Carpenter* would require Varady to negate intentional or consciously indifferent conduct. The first element is satisfied if the factual allegations asserted, if true, negate intentional or consciously indifferent conduct, and the opposing party does not controvert the factual allegations. *In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006). We look to all the evidence in the record to determine whether the defendant's factual assertions are controverted. *Id.*

ANALYSIS

"Intentional or conscious indifference for purposes of *Craddock* means 'that the defendant knew it was sued but did not care.'" *Hampton-Vaughan Funeral Home v. Briscoe*, 327 S.W.3d 743, 747-48 (Tex. App.—Fort Worth 2010, no pet.) (quoting *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 576 (Tex. 2006)). A defendant's mere negligence does not show conscious indifference. *Id.* at 748; *see Levine v. Shackelford, Melton & McKinley, L.L.P.*, 248 S.W.3d 166, 169 (Tex. 2008) ("[T]he complete definition of conscious indifference amounts to more than mere negligence[.]"). A defendant must offer some excuse for the failure to appear at trial, which need not necessarily be a good excuse. *See Briscoe*, 327 S.W.3d at 748; *Sharpe v. Kilcoyne*, 962 S.W.2d 697, 701 (Tex. App.—Fort Worth 1998, no pet.) ("Even a slight excuse may justify a new trial.").

17

In other words, a "failure to appear is not intentional or due to conscious indifference . . . merely because it is deliberate; it must also be without adequate justification. Proof of such justification—accident, mistake or other reasonable explanation—negates the intent or conscious indifference for which reinstatement can be denied." *Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex. 1995) (holding that failure to appear at trial was not consciously indifferent when party's attorney requested continuance and mistakenly understood continuance would be granted).

The party seeking a new trial has the burden to prove the lack of intent or lack of conscious indifference. *Liberty Mut. Fire Ins. Co. v. Ybarra*, 751 S.W.2d 615, 618 (Tex. App.—El Paso 1988, no writ). "Where the factual allegations in a movant's affidavits are not controverted, it is sufficient that the motion and affidavit set forth facts which, if true, would negate intentional or consciously indifferent conduct." *Jackson v. Mares*, 802 S.W.2d 48, 50 (Tex. App.—Corpus Christi 1990, writ denied). If the nonmovant provides controverting evidence showing conscious indifference by the movant, then the issue becomes a fact question for the trial court to determine. *Id.*

Varady asserted that her failure to respond to the summary judgment motion was not intentional or the result of conscious indifference, but was the result of an

18

accident or mistake. The Defendants argued in their Response to the Motion for New Trial and on appeal that Varady failed to establish that her failure to respond was the result of an accident or mistake. Varady was not a *pro se* party as in *Wheeler*, and the record now before us clearly establishes that Varady's attorney received multiple notices of the filing of the no-evidence motion for summary judgment and of the setting of the hearing on the submission docket.

In her appellate brief, Varady argues that her trial attorney's failure to file a timely response to the Defendants' motion for summary judgment was not the result of him failing to understand summary judgment procedure or a result of indifference, but instead the result of his "mistaken belie[f]" that the e-file system had rejected the filing of the Defendants' motion for summary judgment and that a corrected version had not been filed. According to Varady's brief, her trial counsel "admittedly should have paid closer attention to the notifications that he received, [but] he did not simply decide to ignore the motion."

The Defendants argue that the record supports the conclusion that Varady's counsel engaged in conduct that demonstrated a pattern of ignoring deadlines that would constitute conscious indifference. They assert that Varady's counsel's affidavit contained inconsistencies. In his affidavit, counsel stated he "did not think that a response was necessary." In his affidavit, Varady's counsel failed to

acknowledge his receipt of multiple notices for the no-evidence motion for summary judgment that he received from the Texas electronic filing system. The controverting affidavit defendants filed with their Response to the Motion for New Trial and exhibits attached thereto established that Varady's attorney received multiple notices of the no-evidence motion for summary judgment and of the acceptance of the filing by the clerk's office. The controverting affidavit also set forth evidence regarding various deadlines for requests for discovery that Varady's counsel repeatedly missed throughout the litigation. Attached to the Defendants' Response to Motion for New Trial were exhibits supporting the Defendants' claim that Varady's counsel repeatedly failed to timely respond to discovery requests despite multiple requests and reminders. Looking at the record as a whole, we determine that the trial court could have reasonably concluded that Varady's excuse for failing to respond to the no-evidence motion for summary judgment has been controverted by the Defendants.

The trial court could reasonably have concluded that Varady's counsel's failure to respond to the e-file notices alone amounted to more than mere negligence. Furthermore, the trial court could have reasonably determined that this failure, along with the Defendants' uncontroverted allegations of Varady's counsel's pattern of ignoring deadlines in the case (as presented by the Defendants

20

in their response to Varady's Motion for New Trial), amounted to conscious indifference. *See Kern v. Spencer*, No. 2-06-199-CV, 2008 Tex. App. LEXIS 5582, **15-16 (Tex. App.—Fort Worth July 24, 2008, no pet.) (no abuse of discretion for trial court to deny motion for new trial when evidence included: six certified mailings notifying attorney of submission date; uncontroverted statements regarding attorney's recurring pattern of failure to prosecute case, show up for depositions, and respond to discovery; and testimony that attorney often used excuse of not having been notified); *see also Levine*, 248 S.W.3d at 169 (in a default judgment setting, a pattern of ignoring deadlines and warnings from opposing party amounts to conscious indifference).

Additionally, were we to apply the remaining prongs of the modified *Craddock* test as Varady requests, we note that Varady also failed to establish a genuine issue of material fact on the issues the Defendants raised in their no-evidence motion for summary judgment. *See Weech*, 392 S.W.3d at 825. In the no-evidence motion for summary judgment, the Defendants argued that Varady's claims are based on her allegations that the Defendants wrongfully took $117,000 from a bank account that was jointly owned by Varady and Christina, but Varady failed to produce evidence to support the basis of her claims as asserted in her petition, and more specifically Varady produced no evidence to support her

contentions that the Defendants owed or breached a fiduciary duty, made misrepresentations, breached a contract, held money belonging to Varady, or made negligent misrepresentations.[2]

In her Motion for New Trial, Varady claimed she provided the Defendants with bank records on March 17, 2015, that the records represent "some evidence" that the Defendants misused the money that Varady provided for the benefit of the child, and that this evidence at the very least met the minimum burden of evidentiary proof necessary to grant a new trial. A copy of Varady's counsel's March 17, 2015 email to opposing counsel with copies of what appears to be pages from a bank statement were filed as Exhibits J and K to Varady's Motion for New Trial. On appeal, Varady asserts these records are "some evidence that the [Defendants] had used the money for purposes other than those agreed to, and/or, had failed to explain how the expenditures were in furtherance of their agreement." Documents submitted as summary judgment proof must be sworn to or certified. *Llopa, Inc. v. Nagel*, 956 S.W.2d 82, 87 (Tex. App.—San Antonio 1997, writ denied). Unauthenticated or unsworn documents do not constitute summary judgment evidence. *Kleven v. Tex. Dep't of Crim. Justice Institutional Div.*, 69

---

[2] Varady did not object to the form or substance of the Defendants' Motion for Summary Judgment in her Motion for New Trial and she does not raise a complaint regarding the form or substance of the Motion for Summary Judgment on appeal.

22

S.W.3d 341, 345 (Tex. App.—Texarkana 2002, no pet.); *Llopa, Inc*., 956 S.W.2d at 87. Nothing in the record before us indicates that the copies of the bank records were authenticated or sworn to. The trial court could have reasonably concluded that Varady failed to establish how the bank records created a fact issue on any of her alleged claims.

Because the trial court could have reasonably concluded that Varady did not meet her burden of proof to show that her failure to respond, together with the pattern of ignoring deadlines, was not the result of conscious indifference and could have concluded that Varady did not present evidence sufficient to raise a genuine issue of material fact on the issues raised in the Defendants' no-evidence summary judgment motion, the trial court did not abuse its discretion in denying Varady's Motion for New Trial and Request for Leave to File a Summary Judgment Response Late. We overrule Varady's issue on appeal. We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 30, 2015
Opinion Delivered April 14, 2016

Before McKeithen, C.J., Horton and Johnson, JJ.